EMERSON COLLEGE vs. CITY OF BOSTON & others.[1]

Suffolk. November 8, 1983. — March 14, 1984.

Present: HENNESSEY, C.J., ABRAMS, LYNCH, & O'CONNOR, JJ.

Constitutional Law, Taxation. Taxation, Real estate tax: assessment; Excise. Municipal Corporations, Firefighting expenses. Boston.

A statutorily authorized charge by the city of Boston upon the owners of buildings with certain physical characteristics, which was intended to pay for the availability of augmented fire protection to such buildings and which produced revenue for allocation to general police and fire services, constituted a tax to defray the cost of a public benefit, rather than merely a fee payable for a benefit limited to the building owners. [423-427]

A statutorily authorized charge by the city of Boston upon the owners of buildings with certain physical characteristics, to pay for the availability of augmented fire protection to such buildings, was not an excise tax but was, rather, a tax on real property and, as such, violated the requirement of the Massachusetts Constitution that property taxes be proportional. [427-428]

CIVIL ACTION commenced in the Superior Court Department on January 27, 1983.

The case was heard by Nixon, J., and was reported by him to the Appeals Court. The Supreme Judicial Court granted a request for direct review.

Howard P. Speicher, Assistant Corporation Counsel, for the defendants.

Stuart DeBard for the plaintiff.

Lane McGovern & David J. Kerman, for Association of Independent Colleges and Universities in Massachusetts, amicus curiae, submitted a brief.

Wayne S. Henderson & Jean M. DeLuca, for New England Legal Foundation, amicus curiae, submitted a brief.

[1] The fire commissioner of the city of Boston and the collector of taxes of the city of Boston.

ABRAMS, J.  In 1982, the Legislature conferred authority on the city of Boston to impose a charge for fire protection against the owners of certain buildings that "by reason of their size, type of construction, use and other relevant factors . . . require[ ] the city to employ additional firefighters, deploy additional equipment and purchase equipment different in kind from that required to provide fire protection for the majority of structures." St. 1982, c. 190, § 30.[2]  Under the statute, the city "is authorized to impose a fee for augmented fire services availability pursuant to [St. 1982, c. 190, § 30] or pursuant to an ordinance enacted by the city of Boston not inconsistent with [St. 1982, c. 190, § 30]."

On February 16, 1983, after the plaintiff's suit was initiated, the Boston city council, acting pursuant to the statute, promulgated an ordinance establishing augmented fire services availability (AFSA).  The plaintiff's motion for a preliminary injunction against imposition of the AFSA charge was denied on February 24, 1983.  On the same date, the mayor of Boston approved the AFSA ordinance.  City of Boston Code, Ordinances, Title 14, § 459, as amended February 24, 1983.[3]

---

[2] Statute 1982, c. 190, § 30, reads in part as follows: "The cost of providing the availability of fire protection to certain structures in the city of Boston is greater than the cost of providing the availability of fire protection to the majority of structures, by reason of their size, type of construction, use and other relevant factors.  The provision of fire protection to such structures requires the city to employ additional firefighters, deploy additional equipment and purchase equipment different in kind from that required to provide fire protection for the majority of structures.  The availability of such additional fire services is being provided to a small proportion of the buildings in the city.  Therefore, the city of Boston is authorized to impose a fee for augmented fire services availability pursuant to the following or pursuant to an ordinance enacted by the city of Boston not inconsistent with the following.

"(2) The purpose of this act is to assure the city's continued ability to provide the availability of fire fighting services in excess of the degree of such services provided to the general public by imposing the cost of making available such extra services on those to whom such extra services are made available."

[3] The ordinance that became effective on February 24, 1983, was the third version of the AFSA charge promulgated by the city.  The first ordinance was approved by the mayor on February 25, 1982.  City of Boston Code, Ordinances, Title 14, § 459, inserted by City of Boston Ordinances of 1982, c. 7.  The validity of that ordinance was challenged by the Greater Boston Real Estate Board.  On April 12, 1982, a judge in the Superior Court, citing a section of

The plaintiff, a tax exempt educational institution, owns four-teen buildings in the city, containing classrooms, administrative offices and dormitories. These buildings were inspected by the fire department in December, 1982, to determine whether they were subject to the charge. On January 27, 1983, the plaintiff brought an action pursuant to G. L. c. 231A, § 1, requesting a declaratory judgment and injunctive relief. The plaintiff's com-plaint alleged that the AFSA charge is in effect a tax on real property from which Emerson is exempt under G. L. c. 59, § 5. The plaintiff also alleged that the AFSA charge violates the con-stitutional requirement that property taxes be "proportional and reasonable," Part II, c. 1, § 1, art. 4, of the Massachusetts Constitution, and that computation of the charge by the fire com-missioner constitutes an unconstitutional delegation of taxing au-thority to an administrative official. On March 1, 1983, the city mailed bills totaling $12,029 for AFSA charges assessed against three of the plaintiff's buildings.[4]

After the denial of a second motion for a preliminary injunction, the case was heard on March 28 and 29, 1983. On April 1, 1983, the judge issued a memorandum and order declaring the statute and the ordinance invalid as applied to the plaintiff and facially unconstitutional, and enjoined their enforcement. The judge found that the statute permits the city to exact a charge

---

the ordinance stating that revenues from the AFSA charge "shall be used to restore and maintain adequate public safety forces in the City of Boston which shall be defined as Police and Fire Services," held that the charge was a tax, rather than a fee, and was invalid because the power to impose such a tax had not been delegated to the city. See art. 89, § 7, of the Amendments of the Massachusetts Constitution.

On April 14, 1982, the Boston city council passed an ordinance amending the AFSA ordinance by striking the section pertaining to use of AFSA charge revenues. On May 24, 1982, the amended ordinance was declared invalid by the same judge. The judge reiterated his conclusion that the AFSA charge was an unauthorized tax, this time basing his determination on the observation that a charge is not a fee if it is assessed for the availability of services rather than for services rendered. The case was reported to the Appeals Court but was mooted by the enactment of St. 1982, c. 190 § 30, which provided statutory authority for the imposition of the charge, and by the subsequent striking of the invalidated amended ordinance and its replacement by the February 24, 1983, ordinance that is the subject of the current litigation.

[4] The bills remain unpaid pending resolution of this case.

"based on a complex, sophisticated but not scientifically proven or generally accepted formula, which attempts to assess costs of providing life safety services in terms of gallons per minute." The judge found that "[t]he buildings against which the charge (tax) [was] levied [were] not uniformly selected nor assessed." He determined that the AFSA charge was not a fee because "[a] fee is based on services performed or delivered and not on anticipatory expenses for services which may never be needed . . . ." Quoting *Williams College* v. *Williamstown,* 219 Mass. 46, 48 (1914), he concluded, "Protection from fires always has been treated as a general function of government."

The judge declared "that the money sought to be collected by the city under sec. 30 of Chapter 190 of the Acts of 1982 and/or Title 14, sec. 459 of the Ordinances of the City of Boston, approved by the Mayor on February 24, 1983 is a tax and not a fee." He noted that the plaintiff is a tax exempt institution. He then declared that the money "sought to be raised [was] a real estate tax and not an excise tax," and, further, that the tax was not "proportional and reasonable." See Part II, c. 1, § 1, art. 4, of the Massachusetts Constitution.[5] The judge reported his

---

[5] The city does not challenge the judge's determination that the AFSA charge, if classified as a real property tax rather than as a fee or excise, violates the requirements for real estate taxation set forth in Part II, c. 1, § 1, art. 4, of the Massachusetts Constitution. Because it is imposed on a minority of property owners, the charge fails to comport with the requirement that real estate taxation be proportional. See *Opinion of the Justices,* 378 Mass. 802, 803 & n.1 (1979). Additionally, the charge is not imposed on an ad valorem basis. Cf. *Fairmont* v. *Pitrolo Pontiac-Cadillac Co.,* W.Va. (1983) (308 S.E.2d 527 [W.Va. 1983]) (fire protection "fee" imposed on all buildings within city at rate of fifty-five cents per $100 of building's value constitutes ad valorem property tax, but invalid because in excess of constitutional limitations).

The city correctly refrains from arguing that the AFSA charge is a special assessment or amount due for a betterment. Cf. G. L. c. 80, § 1. Special assessments may be imposed for local improvements which enhance the value of real property, provided the assessments are not in substantial excess of the benefits received. See *Illinois Cent. R.R.* v. *Decatur,* 147 U.S. 190, 199 (1893); *White* v. *Gove,* 183 Mass. 333, 335 (1903). The maintenance of eight and one-half fire companies necessary to extinguish fires at various buildings distributed throughout Boston is not a local improvement. Nor is any increase in the value of property containing AFSA structures apparent — instead, fire protection once included within the general property tax has been reclassified as a special service and an incremental cost imposed. Cf. *Williams College* v. *Williamstown,* 219 Mass. 46, 47 (1914).

decision to the Appeals Court. We granted the parties' joint application for direct appellate review.[6] We conclude that the AFSA charge is a chimera, bearing features of both a fee and a tax, but not valid in either form. Therefore, we affirm the judgment invalidating the statute and the ordinance.

We summarize the relevant provisions of the AFSA statute and ordinance, as well as pertinent testimony presented at the Superior Court hearing. The proclaimed purpose of the statute "is to assure the city's continued ability to provide the availability of fire fighting services in excess of the degree of such services provided to the general public by imposing the cost of making available such extra services on those to whom such extra services are made available." St. 1982, c. 190, § 30 (2). The statute thus distinguishes two classes of building owners. In one class are owners of buildings who are deemed members of the "general public," to whom fire protection services are made available without any charge beyond the annual property tax. In a distinct class are building owners who, by implication, are not considered members of the "general" public, and who, in addition to the property tax, if any, assessed against them,[7] must pay an AFSA charge for the availability of fire protection. A building-owner is subject to the AFSA charge if the "total fire fighting capacity . . . necessary to extinguish a fully involved fire" in the building exceeds 3,500 "gallons per minute." St. 1982, c. 190, § 30 (3) (i), (ii).

The statutory scheme is based on a legislative determination that a disproportionate percentage of the city of Boston's firefighting budget is consumed by expenses related to the maintenance of equipment and personnel capable of protecting buildings with

---

[6]Helpful amicus curiae briefs have been filed by the Association of Independent Colleges and Universities in Massachusetts and by the New England Legal Foundation.

[7]Some buildings against which the AFSA charge is assessed, including the three buildings owned by the plaintiff, are exempt from ad valorem property taxes. See G. L. c. 59, § 5. However, although the fire department investigates all tax exempt buildings to determine whether they are subject to the AFSA charge, there is no statutory correlation between tax-exempt status and payment of the AFSA charge. Imposition of the charge is contingent on factors relating to the physical characteristics of a given building, rather than on tax status. Thus, some nonexempt buildings may be required to pay an AFSA charge, whereas some exempt buildings would obtain fire protection without payment.

physical characteristics requiring, in the event of a fire, the presence of more than fourteen fire companies. The fire commissioner said that 3,500 gallons per minute is the functional equivalent of fourteen fire companies,[8] the personnel and equipment necessary to combat a three-alarm fire.

There are currently fifty-six and one-half fire companies[9] in Boston. Of that number, forty-eight companies would suffice to combat simultaneously one 3,500 gallon per minute fire and one smaller, 2,000 gallon per minute fire, while maintaining four companies available for discretionary use as well as one fire engine and one truck on standby in each of the city's eleven fire districts. The remaining eight and one-half companies are maintained to guard against the potential occurrence of a fire exceeding the 3,500 gallon per minute category. The parties stipulated that the Boston fire department's costs for fiscal year 1983 would be $76,877,152. According to the director of the city's office of fiscal affairs (OFA), $10,114,502 of that sum is allocable to the personnel, equipment, and overhead costs of providing AFSA.[10] Over 13% of the Boston fire department's costs for fiscal year 1983 can thus be traced to AFSA.[11] After applying a statutory formula, which we discuss

[8] The management and systems consultant hired by the city to assist in the implementation of the AFSA charge testified that, historically, one fire company was capable of delivering 250 gallons of water per minute. In current usage, 250 gallons per minute is considered the equivalent of one fire company, irrespective whether the company delivers water, ladders, or other equipment and personnel necessary to fire fighting.

[9] The fire commissioner counted as one-half company the personnel necessary to operate an aerial tower.

[10] The $76,877,152 figure for total fire department costs includes: fire fighters' salaries ($39,783,777), administrative backup ($7,430,815), pensions ($19,867,800), health insurance ($1,024,400), overtime ($1,602,720), workmen's compensation ($200,000) and indemnification ($500,000); $1,185,836 in maintenance and capital costs for fire fighting equipment; and $5,281,804 in overhead costs for fire stations. On the basis of these figures, average yearly costs to the city for each fire fighter, each piece of equipment, and each fire station were computed. A multiplication of the average cost figures by the number of fire fighters, pieces of equipment, and fire stations absorbed by the eight and one-half fire companies necessary to provide AFSA yields the $10,114,502 figure for total AFSA expenditures.

[11] The evidence suggests that the cost of AFSA is attributable principally to quantitative rather than qualitative differences between the city's current fire fighting

*infra*, to data collected through inspections of approximately 5,000 buildings,[12] the fire commissioner determined that, in 1983, some 2,000 buildings, or 2% of the buildings in Boston, necessitate AFSA.

The statute requires that, prior to March 1 of each year, the fire commissioner determine not only which buildings in Boston are subject to the AFSA charge, but also the amount of the charge to be assessed each such building. A formula set forth in the statute establishes three principal factors to be considered by the fire commissioner in establishing whether, in the event of fire, a building would require more than 3,500 gallons per minute of fire fighting capacity.

One factor, the "needed fire flow" (NFF), measures the personnel and equipment necessary to extinguish a fire in the building. The NFF is determined by reference to various subfactors: the building's construction type, including the fire resistance of its constituent materials; the effective area of the building in square footage; the use of the building, including the combustibility of its contents; and "exposure" and "connecting passageways" subfactors, which measure the risk that a fire would spread to adjacent buildings. St. 1982, c. 190, § 30 (3) (*iii*).

The second factor, the "life risk factor" (LRF), measures the personnel and equipment necessary to ensure the safety of the occupants of the burning building. The LRF takes into account the building's density of occupancy, hours of occupancy, number of stories, and whether the building contains smoke removal equipment. St. 1982, c. 190, § 30 (3) (*v*).

The third factor is a "suppression credit" (S), which operates to reduce the gallons per minute computation by an amount that reflects a building's existing fire suppression and detection equip-

personnel and equipment needs and the corresponding needs, were there no buildings requiring more than fourteen fire companies in the event of fire. At the hearing, the only pieces of equipment referred to as being specifically targeted for fires in AFSA structures were two aerial towers costing a total of $34,676 per year.

[12] On the basis of data previously collected by the city's office of property equalization (OPE), the fire commissioner determined which buildings in the city possessed characteristics warranting an inspection for AFSA charge assessment purposes.

ment. St. 1982, c. 190, § 30(3) (*iv*). The department's consultant indicated that a suppression credit is granted for smoke and heat detectors connected to an alarm at the fire department. A larger suppression credit may be obtained if a building has standpipes with outlets to which fire hoses can be connected. A building's sprinkler systems also reduce the total gallons per minute computation.[13]

The three factors, as incorporated in the statutory formula, yield a "total fire flow" (TFF) computation expressed in gallons per minute. St. 1982, c. 190, § 30 (3) (*ii*). If a building's TFF exceeds 3,500, it is subject to the AFSA charge. Every gallon per minute in excess of 3,500 is considered an AFSA "unit." The OFA director testified that the total number of AFSA units for fiscal year 1983, as determined by the fire commissioner's application of the formula to data collected through building inspections, is 4,624,828. The $10,114,502 in costs attributable to AFSA protection was divided by 4,624,828 to yield a cost per AFSA unit of $2.187.

After inspecting the plaintiff's buildings, the fire commissioner determined that three of the buildings had AFSA requirements measured, respectively, at 1,250, 2,500, and 1,750 AFSA units. Accordingly, the plaintiff received bills of $2,734, $5,468, and $3,827 for the three buildings.

Because the AFSA charges are based on the availability of fire protection, the plaintiff, and other owners of AFSA structures, must pay the charges irrespective whether the fire department's services are actually utilized to battle fires in the specific buildings for which the charges are imposed. Charges are payable in two instalments. On payment of the first instalment, the owner paying an AFSA charge may appeal the correctness of the assessment to the commissioner. No further review, either administrative or judicial, is authorized by the statute.[14] The statute directs that "[r]evenues received

---

[13] The existence of sprinkler systems reduces the NFF factor rather than increasing the S factor. A decrease in the NFF factor, like an increase in the S factor, lowers the TFF computation on which assessment of the charge, as well as the amount of the charge, is contingent.

[14] The judge found that St. 1982, c. 190, § 30, impermissibly delegated the taxing authority to an administrative officer. He further concluded that the failure to provide for judicial review is fatal to the validity of the statute. We uphold the

[from AFSA charges] shall be used to restore and maintain adequate public safety forces in the city of Boston which shall be defined as police and fire services." St. 1982, c. 190, § 30 (4).[15]

1. Our initial inquiry pertains to the nature of the monetary exaction imposed by the AFSA statute. The city argues that the judge erred in rejecting the statutory characterization of the charge

---

judge's decision on other grounds. We believe, however, that the judge was correct in concluding that the unreviewable discretion conferred on the fire commissioner by the statute is constitutionally impermissible.

Although the statutory formula establishes several factors to be considered by the commissioner in determining the number of AFSA units attributable to a given building, see *supra* at 421, these factors are determined not only by means of objective computations but through subjective, qualitative evaluations by the fire commissioner. We have noted that a delegation of the taxing power to an administrative official may be allowed if "the [tax] rate is mathematically deduced [by the official] from facts and events occurring within the year and created without reference to the matter of that rate." *Commissioner of Revenue* v. *Massachusetts Mut. Life Ins. Co.*, 384 Mass. 607, 610 (1981), quoting *Michigan Cent. R.R.* v. *Powers*, 201 U.S. 245, 297 (1906). The statute we review, by contrast, confers on the fire commissioner the "power to affect the amount of tax payable." *Commissioner of Revenue, supra* at 610.

We need not decide whether such a delegation of the taxing power would be permissible given adequate administrative or judicial review of the actions taken by the fire commissioner, see *Opinion of the Justices*, 341 Mass. 738, 759 (1960); 1 K.C. Davis, Administrative Law § 3:15, at 208, 210 (2d ed. 1978), for the statute establishes no such appellate procedure. The only appeal available to owners assessed an AFSA charge is to the fire commissioner. Although under G. L. c. 249, § 4, as appearing in St. 1973, c. 1114, § 289, an action in the nature of certiorari may be brought "to correct errors in proceedings . . . not otherwise reviewable by motion or by appeal," that review offers no protection against discretionary administrative actions. See, e.g., *School Comm. of Hatfield* v. *Board of Educ.*, 372 Mass. 513, 517 (1977).

[15] The provisions of the ordinance promulgated under the statute are in most respects similar to the statutory provisions. There are, however, material variations. Unlike the statute, the ordinance provides that a building owner is exempt from paying for AFSA units attributable to portions of the building rented as residential units. City of Boston Code, Ordinances, Title 14, § 459, as amended February 24, 1983. The ordinance also differs from the statute in that it is silent as to the application of revenues from AFSA charges. Further, there are discrepancies between the assessment, payment, and appeal dates established by the ordinance and those set forth in the statute. On the view we take of the case, we need not address the plaintiff's argument that the ordinance is invalid because it is inconsistent with the enabling statute or because it violates constitutional equal protection standards.

as a fee, and in holding that the charge is a property tax. Consequently, the city alleges, the judge's conclusion that the plaintiff is insulated from paying the charge by the G. L. c. 59, § 5, property tax exemption was erroneous, as was the judge's determination that the statute is facially inconsistent with constitutional limitations on the taxing power.

In reviewing the statute, we are bound, as was the judge, to treat with deference the classification of the charge as a fee. "In any doubtful case, the intention of the Legislature, as it may be expressed in part through its characterization [of the charge] . . . deserves judicial respect, and especially so where the constitutionality of the exaction depends on its proper characterization" (footnote omitted). *Associated Indus. of Mass., Inc.* v. *Commissioner of Revenue,* 378 Mass. 657, 667-668 (1979). See *Opinion of the Justices,* 250 Mass. 591, 597 (1924). Ultimately, however, the nature of a monetary exaction "must be determined by its operation rather than its specially descriptive phrase." *Thomson Elec. Welding Co.* v. *Commonwealth,* 275 Mass. 426, 429 (1931). Accord *Eaton, Crane & Pike Co.* v. *Commonwealth,* 237 Mass. 523, 528 (1921). See *Dawson* v. *Kentucky Distilleries & Warehouse Co.,* 255 U.S. 288, 292 (1921); *Gunby* v. *Yates,* 214 Ga. 17, 19 (1958).

With these considerations in mind, we turn to the question whether the AFSA charge is a fee. Fees imposed by a governmental entity tend to fall into one of two principal categories: user fees, based on the rights of the entity as proprietor of the instrumentalities used, *Opinion of the Justices,* 250 Mass. 591, 597 (1924), or regulatory fees (including licensing and inspection fees), founded on the police power to regulate particular businesses or activities, *id.* at 602. See *Boston* v. *Schaffer,* 9 Pick. 415, 419 (1830); P. Nichols, Taxation in Massachusetts 6-9 (3d ed. 1938). Such fees share common traits that distinguish them from taxes: they are charged in exchange for a particular governmental service which benefits the party paying the fee in a manner "not shared by other members of society," *National Cable Television Ass'n* v. *United States,* 415 U.S. 336, 341 (1974); they are paid by choice, in that the party paying the fee has the option of not utilizing the governmental service and

thereby avoiding the charge, *Vanceburg* v. *FERC,* 571 F.2d at 630, 644 n.48 (D.C. Cir. 1977), cert. denied, 439 U.S. 818 (1978), and the charges are collected not to raise revenues but to compensate the governmental entity providing the services for its expenses.[16]

The city emphasizes that the factors used to determine the amount of each AFSA assessment are related to the city's costs in providing AFSA protection and urges that, on this basis alone, the charge be characterized a fee. We agree that, in its correlation to the costs of funding the personnel and equipment constituting eight and one-half of Boston's fire companies, the AFSA charges bears some similarity to a user fee.

The AFSA charge fails, however, to comply with another essential characteristic of a fee. Fees are legitimate to the extent that the services for which they are imposed are sufficiently particularized as to justify distribution of the costs among a limited group (the "users," or beneficiaries, of the services), rather than the general public. The benefits of "augmented" fire protection are not limited to the owners of AFSA buildings. The capacity to extinguish a fire in any particular building safeguards not only the private property interests of the owner, but also the safety of the building's occupants

---

[16] Proprietary fees do not implicate the taxation power if "based on fair recompense for the public moneys expended for initial construction and for adequate maintenance" of the facilities used. *Opinion of the Justices,* 250 Mass. 591, 597 (1924). Similarly, regulatory fees are not taxes if commensurate with governmental expenditures occasioned by the regulated party. The general rule as to regulatory fees is "that the costs to the municipality which may be considered are [not] simply those which arise directly in the enforcement of the regulatory provisions themselves. The license fee may properly be fixed with a view to reimbursing the city, town, or county for all expenses imposed upon it by the business sought to be regulated. 'In fixing upon the fee, it is proper and reasonable to take into account not the expense merely of direct regulation, but all the incidental consequences that may be likely to subject the public to cost in consequence of the business licensed.'" *United Business Comm'n* v. *San Diego,* 91 Cal. App. 3d 156, 166 (1979), quoting *County of Plumas* v. *Wheeler,* 149 Cal. 758, 764 (1906). See *Boston* v. *Schaffer,* 9 Pick. 415, 419 (1830). See also *Fletcher Oil Co.* v. *Bay City,* 247 Mich. 572, 577 (1929); *Opinion of the Justices,* 112 N.H. 166, 170 (1972); *Phillips* v. *Folcroft,* 44 Pa. Commw. 83, 86 (1979); *Fort Worth Gulf Ref. Co.,* 125 Tex. 512, 529 (1935); *State* v. *Jackman,* 60 Wis.2d 700, 707 (1973). Cf. *Richmond Heights* v. *LoConti,* 19 Ohio App. 2d 100, 110 (1969). See generally 3 C.J. Antreau, Municipal Corporations Law § 24.14, at 24-551 (1981).

as well as that of surrounding buildings and their occupants. In more sparsely populated areas, it may be possible to isolate private property interests in fire suppression from the property and safety interests of the public at large. In a large, densely populated city like Boston, "the prevention of damage to buildings by fire is an object which affects the interest of all the inhabitants and relieves them from a common burden and danger." *Fisher* v. *Boston,* 104 Mass. 87, 93 (1870). See *Williams College* v. *Williamstown,* 219 Mass. 46, 48 (1914).

That a particular building requires "augmented" rather than regular fire protection does not change the nature of the benefit conferred by the suppression of a fire in that building from one that is public to one that is limited to the owner of the building. The statutory formula controlling the assessment and computation of AFSA charges illustrates this by factoring in not only the fire fighting capacity necessary to preserve a particular structure in the event of fire, but also the personnel and equipment necessary to safeguard the building's occupants and to prevent the spread of fire to adjacent buildings.

Further confirmation of the public nature of the benefit conferred by AFSA services may be derived from the fact that "use" of AFSA protection is compelled. Fees generally are charged for services voluntarily requested. See *National Cable Television Ass'n* v. *United States,* 415 U.S. 336, 340 (1974). If the benefits for which AFSA charges are imposed were limited to the owners of AFSA structures, rather than being essential to the public welfare, there would be no reason to depart from the optional character of a traditional fee.[17]

---

[17]The city suggests that payment of AFSA charges has the voluntary aspect of a fee, see *Vanceburg* v. *FERC,* 571 F.2d 630, 644 (D.C. Cir. 1977); P. Nichols, *supra* at 6, rather than the coerced aspect of a tax, because the owner of an AFSA building may opt to reduce, and in some cases eliminate, future AFSA charges by installing fire suppression equipment such as sprinklers, smoke detectors, and smoke removal systems. The imposition of an AFSA charge is also contingent, however, on factors (such as building size, materials, and exposure) that are beyond the owner's control.

According to the fire commissioner, a substantial reduction in the city's firefighting equipment and personnel requirements could be achieved through the installation of sprinkler systems in buildings lacking such systems. We note that there is no claim the buildings do not meet applicable State building code standards.

Although we need go no further to sustain the judge's conclusion that the AFSA charge is not a fee, we note additionally that, by statutory command, the amounts collected through AFSA assessments are targeted not for the maintenance of the eight and one-half fire companies attributed to AFSA protection but to general "police and fire services." St. 1982, c. 190, § 30 (4). That revenue obtained from a particular charge is not used exclusively to meet expenses incurred in providing the service but is destined instead for a broader range of services or for the general fund, "while not decisive, is of weight in indicating that the charge is a tax." P. Nichols, *supra* at 7. *Opinion of the Justices,* 250 Mass. at 597. The statutory earmarking of proceeds for non-AFSA services is more consistent with a revenue raising purpose than with an intent to recover AFSA-related expenditures. The AFSA charge thus resembles not a fee, but a tax, which has been defined as "an enforced contribution to provide for the support of government." *United States* v. *Tax Comm'n,* 421 U.S. 599, 606 (1975), quoting *United States* v. *LaFranca,* 282 U.S. 568, 572 (1931).[18]

2. The city contends that even if St. 1982, c. 190, § 30, imposes a tax rather than a fee, the judge erred in holding that the charge is a disproportionate real property tax instead of a valid excise tax. The Legislature is constitutionally authorized to levy excises "upon any produce, goods, wares, merchandise and commodities." Part II, c. 1, § 1, art. 4, of the Massachusetts Constitution. The term "commodities" encompasses "convenience, privilege, profit, and gains." *Minot* v. *Winthrop,* 162 Mass. 113, 120 (1894). The city suggests that the AFSA charge qualifies as an excise on the "privilege" of receiving an extra

[18] The city argues that fire protection differs from other services in that mere availability constitutes a benefit to the owners of buildings which might otherwise be unprotected if struck by fire. Accepting, for purposes of discussion, the proposition that owners of AFSA structures derive some pecuniary benefit from the availability of fire protection, see *Fairmont* v. *Pitrolo Pontiac-Cadillac Co.,*    W.Va.    ,    (1983) (308 S.E.2d 527, 535 [W.Va. 1983]) (Neely, J., dissenting), but see *State Univ.* v. *Patterson,* 42 A.D.2d 328, 329 (N.Y. 1973), we note that the statute makes no attempt to distinguish that particularized benefit from the benefit provided to the general public. In any event, other aspects of the AFSA statute, discussed in the text, preclude classification of the AFSA charge as a fee.

level of fire protection. It is well-established, however, that the obligation to pay an excise tax "is based upon the voluntary act of the person taxed in . . . enjoying the privilege . . . which is the subject of the excise" and that an excise may be imposed only where "the element of absolute and unavoidable demand is lacking." P. Nichols, *supra* at 16. Owners of AFSA structures are not at liberty to reject AFSA services. To the extent that payment of AFSA charges may be avoided by relinquishing ownership of buildings subject to AFSA assessments, the charges tax the privilege of owning certain improved property. "The mere right to hold and own . . . property cannot be made the subject of an excise." *Opinion of the Justices,* 220 Mass. 613, 626 (1915). The judge correctly concluded that the statute does not impose a valid excise tax.[19]

The AFSA charge does not conform to any constitutionally permissible form of monetary exaction. The judgment of the Superior Court, declaring St. 1982, c. 190, § 30, and City of Boston Code, Ordinances, Title 14, § 459, as amended February 24, 1983, invalid, is affirmed.

*So ordered.*

---

[19] The amici argue that, even if the AFSA charge is appropriately denominated a fee or excise tax, it is unconstitutional under Part II, c. 1, § 1, art. 4, of the Massachusetts Constitution, which requires that expenditures for the "public charges of government, or any part thereof" be defrayed through property taxes. See *Dorgan* v. *Boston,* 12 Allen 223, 235 (1866); *Oliver* v. *Washington Mills,* 11 Allen 268, 275 (1865). Neither the plaintiff nor the defendants have briefed this issue. Because we conclude that the AFSA charge constitutes neither a fee nor an excise tax, we need not decide whether the Commonwealth or the city is constitutionally precluded from using fees or excises to pay for fire protection.