Doerfer, J.
Plaintiff, Boston Gas Company (“Boston Gas”), brought this action seeking a declaration that the City of Newton’s Ordinance No. T-161 is preempted by and inconsistent with state law, and therefore invalid. Boston Gas also sought a declaration that Ordinance No. T-161 constitutes an improper tax. On June 30, 1994, this court granted summary judgment for the City of Newton and declared that Ordinance No. T-161 was not preempted by or inconsistent with state law. The court further declared that Ordinance No. T-161 constitutes a fee rather than a tax. Boston Gas now moves the court for reconsideration of its June 30, 1994 Order. For the reasons which follow, the plaintiffs motion for reconsideration is denied.[1]
BACKGROUND
Boston Gas excavates streets and public ways in order to maintain, repair, and install an underground gas distribution system. In 1991, the City of Newton’s Board of Aldermen enacted Ordinance No. T-161 which, for the first time, imposed monetary payments for all street-opening permits. The City of Newton labelled these payments “application fees” and “inspection and maintenance fees.” Ordinance No. T-161 requires payment of a $25.00 application fee, $150.00 charge for excavating 100 square feet or less, and $50.00 for each additional 100 square feet excavated.[2]
DISCUSSION
I.
Boston Gas urges the court to reconsider whether the Ordinance No. T-161 fee complies with the first two prongs of the Emerson College test.[3] In Emerson College v. Boston, 391 Mass. 415, 424-25 (1984), the Supreme Judicial Court established three criteria to distinguish fees from taxes.
1. [T]hey are charged in exchange for a particular governmental service which benefits the party paying the fee in a manner not shared by other members of society.
2. [T]hey are paid by choice, in that the party paying the fee has the option of not utilizing the governmental service and thereby avoiding the charge.
*59 3. [T]he charges are collected not to raise revenues but to compensate the governmental entity providing the services for its expenses.
In regard to the first prong, Boston Gas contends that, because the fee is calculated to recover the cost of a full-time inspector to inspect street openings, the “service” does not confer a benefit to Boston Gas. Although the City has the overall responsibility for inspecting and maintaining the streets for the benefit of the public, the excavations by Boston Gas are clearly for the benefit of Boston Gas. The subsequent inspection by the Ciiy to ensure that the street is put back in a safe condition is for the purpose of ensuring that Boston Gas fulfills its duty not to create a risk of harm to the public by leaving its excavation in a shoddy condition. Boston Gas’s argument, that filling and surfacing the holes it digs in a safe manner is really the responsibility of the City, is absurd. The fee to inspect the work of Boston Gas is occasioned by the need of Boston Gas to obtain a benefit, which is a benefit not shared by other members of society. In this sense, the fee is no more a tax than a fee charged for a building permit which covers, among other things, the cost of inspection to ensure compliance with building and safety codes.
The Emerson College case is distinguishable from the instant case. In Emerson College, the City of Boston subjected the plaintiff to a charge solely on the basis of its status as an owner of a tall building.[4] The building owners did nothing to trigger payment of the fee. The court held, inter alia, that because the plaintiff had no interest in fire prevention that was distinguishable from the interests of the public at large, the charge constituted a tax. In contrast, Boston Gas actively solicits City permits to excavate in order to maintain and upgrade its business. The granting of Ciiy permits, as well as the City’s subsequent inspections, confers a far greater benefit on Boston Gas than on other members of society who, at most, have an arguable interest in a healthy utility. Therefore, the court concludes that the Ordinance No. T-161 fee satisfies the first prong of the Emerson College test.
II.
Boston Gas further contends that the City of Newton’s charge is a tax because Boston Gas has no option of avoiding the charges by not utilizing the governmental service.[5] Boston Gas asserts that “to provide gas service safely, the company must maintain its distribution system, 99% ofwhich is underground.” (Plaintiffs Memorandum in Support, p.6.) Boston Gas urges the court to conclude that the option of ceasing operations is not a meaningful choice. As the City of Newton asserts, this argument has been rejected in other fee cases.
In Emerson College, while the court articulated the “choice requirement” the court focused only on the first prong of the test, and incidentally mentioned the third prong.
Although we need go no further [than establishing that the benefits of augmented fire protection are not limited to the owners of tall buildings] to sustain the judge’s conclusion that the AFSA charge is not a fee, we note additionally that . . . the amounts collected through AFSA assessments are targeted not for the maintenance of the eight and one half fire companies but to general police and fire services. That revenue obtained from a particular charge is not used exclusively to meet expenses incurred in providing the service . . . “is of weight in indicating that the charge is a tax.” Emerson College, supra at 427.
Since Emerson College, the courts have broadly construed the “choice” requirement and found the second prong satisfied even when the plaintiff would suffer a serious hardship in not utilizing the government service. See Bertone v. Department of Public Utilities, 411 Mass 536, 549 (1992) (holding developer could avoid electrical utility hook-up fee by not developing land); Southview Co-operative Housing Corp. v. Rent Control Board of Cambridge, 396 Mass 395, 402 (1985) (holding landlords could avoid Rent Control Board’s fee by not filing for rent adjustments, and if rents were too low, ceasing to be landlords); see also Winthrop v. Winthrop Housing Authority, 27 Mass.App.Ct. 645, 647 (1989) (housing authority could avoid fee by not hooking housing project units up to town sewer). Thus, while Boston Gas’s choice of not paying the fee is admittedly difficult, the court concludes, in light of the case law, that the choice is voluntary.
Boston Gas further reiterates its assertion that Ordinance No. T-161 violates the Home Rule Amendment and is preempted by state law. In its June 30, 1994 Order the court thoroughly analyzed the preemption argument. The court found that Ordinance No T -161 was not preempted by nor inconsistent with the regulatory scheme of G.L.c. 164 and G.L.c. 25. The court further found that Ordinance No T-161 did not frustrate the legislative intent of either G.L.c. 164, §70, which defines the full extent of the gas company’s responsibility for street opening repairs; G.L.c. 164, §94, which ensures that public utility consumers enjoy just and reasonable rates; and G.L.c. 84, §1, which mandates that municipalities are exclusively financially responsible for the maintenance of public ways. Boston Gas has not presented any arguments on the preemption issue which were not previously considered and regarded as unpersuasive by this court.
ORDER
For the foregoing reasons, it is ORDERED that the plaintiffs Motion for Reconsideration is DENIED.

Boston Gas had adequate opportunity to make its argument the first time around, but now appears with new counsel. The court does not wish to encourage this practice, but has reviewed all arguments, post and present in any event.

The Ordinance also required payment of $50.00 for making “shut off holes” and $10.00 for each coring.

In a footnote, Boston Gas also contends that the fees do not comply with the third prong of the Emerson College test. Boston Gas asserts that the City of Newton’s calculations are insupportable. However, as stated in the June 30,1994 Order, the party attempting to demonstrate that the fee constitutes a tax has the burden of offering evidence that the charge exceeds the total cost of the services provided. (Citations omitted.) Because Boston Gas has failed to offer any evidence to show that the fees charged to excavate in fact exceed the cost of the service performed by the Cily of Newton, the court continues to conclude that Boston Gas has not met its burden under prong three.

The charge was authorized by the City of Boston upon owners of buildings with certain physical characteristics deemed to require more firefighting services. The charge produced revenues which were allocated to general police and fire services. Emerson College, supra at 423-27.

In its June 30, 1994 Order, the court also analyzed the second prong in light of Boston Gas’s contention that Boston Gas consumers actually pay the fee. The court thus held that because consumers could forego using gas services, the charges were not involuntary. In its motion for reconsideration, Boston Gas asserts that it, not the consumers, pays the fee and that the second prong should be analyzed accordingly. The court therefore provides the above discussion to complement the original Order and to address Boston Gas’s alternative argument. As discussed, whether Boston Gas or Boston Gas consumers are paying the fee, the court concludes that either entity has the choice to forego governmental services to avoid the Ordinance No. T-161 fee.