Fecteau, J.
This matter came on for hearing before me on March 1, 1999, the defendants having received notice and being represented by counsel. The original pleading filed by the plaintiff, entitled “Preliminary Injunction to preclude the imposition of an annual disposal fee,” is inartfully crafted and there is no “complaint” entitled as such; however, the court treats this original pleading as a complaint seeking injunctive relief. The plaintiff seeks a judgment which declares unlawful and which restrains the imposition of an unlawful charge, alleged by the plaintiff to be the equivalent of a tax. The defendants contend otherwise, saying that the transfer station user charge approved by the selectboard is authorized by law and is a user fee and not a tax. The defendants also contend that this action is premature, in that the plan approved has not yet been implemented and no one, including this plaintiff, yet charged or billed for the service. The plaintiff says that the implementation is imminent, with invoices set to be mailed to taxpayers on April 1, 1999, and to be effective as of July 1, 1999, the date after which the current “transfer station stickers” expire.
The Town of Spencer, up to now, has operated its solid waste collection service to its citizens as a part of the general budget, and has not, up to this current controversy, charged for its use in any way other than through the real estate tax. Likely due to increased costs, the town, by its selectboard has decided to have the citizens who use the transfer station help pay for its operation. As I understand the claim of the plaintiff, he is not, by this proceeding, challenging the right of the town to charge a fee or that the moneys to be collected do not have a fair relationship to the use of the service. The dispute, at least as developed during the hearing, is centered over the issue whether the plan as voted on by the board is a voluntary charge to those property owners choosing to utilize the service, or, whether it is the imposition of an unauthorized tax.
The plan as approved by the board calls for every property owner in the town to receive a bill for $52.00, for the use of the transfer station. Those who pay the bill will receive a sticker and be allowed to use the transfer station. Those who wish to “opt out” may do so by an “abatement” procedure, during which they will need to show positive evidence of alternative solid waste disposal arrangements, such as private trash haulers. They, then, will not be allowed to use the transfer station. It is unclear from the plan whether those who do nothing will be assessed the charge and, in default of payment, a lien placed against their property. Although it is reasonable to infer that this will take place, it may be, as the defendants suggest, premature to cast any rulings in concrete, as the plan as implemented may make this controversy moot.
Both sides recognize the case of Emerson College v. City of Boston, 391 Mass. 415 (1984), as the leading authority on the question of whether a municipal charge is allowable as a user fee or an unauthorized tax. That case set forth three criteria for the determination, including the question of whether the charge is for voluntary utilization of the governmental service in question. “Such fees share common traits that distinguish them from taxes: they are charged in exchange for a particular governmental service which benefits the party paying the fee in a manner ‘not shared by other members of society’ [citation omitted]; they are paid by choice, in that the party paying the fee has the option of not utilizing the governmental service and thereby avoiding the charge,...” Emerson College, supra, at p. 424-25.
The plan as outlined by the plaintiff and as is described in the minutes of the board meetings has some characteristics that, in my judgment, show the charge to be involuntary, notwithstanding the “opting-out,” abatement procedure allowed by the plan. First, all property owners will be charged first, without regard to whether individuals will utilize the service or not. Second, instead of a citizen interested in utilizing the service having to take a positive step to obtain a transfer station sticker and pay the fee, property owners will have to take a positive, potentially burdensome step to opt-out of the system by petitioning and satisfying an official of an alternative solid waste collection method. Third, inferentially, that official may have discretion to disbelieve the petitioner and cause the charge to stand. Fourth, the citizen who chooses to neither utilize the service nor opt-out will likely be assessed the charge and a lien placed against the property. All of these characteristics are, at the least, semantically inconsistent with a plan which recognizes “choice” and an “exchange” of a fee for a service. However, as suggested above, it may well be premature to intervene at this anticipatory stage, since the manner of the town’s implementation may obviate the need for court intervention. Moreover, since the plan has, as yet not been implemented, and the invoices still not having been sent out to the property owners, the harm threatened is not “immediate.” Consequently, a trial on merits can be held *542 before any harm becomes “real, ” as opposed to “threatened.”
Under the provisions of Rule 65(b)(2), this matter is ordered consolidated with the trial on the merits and is ordered advanced for trial, to be conducted on or after May 5, 1999. The parties are ordered to meet and confer for the purpose of agreement on a trial date, an accelerated schedule and agenda for discovery (should either party deem such to be necessary) and for the preparation of a joint pre-trial memorandum, the results of which are to be reported to the court on April 2, 1999, at 3:00 p.m., at a Rule 16 conference to be attended by trial counsel.