Sweeney, Constance M., J.
In this action for declaratory relief, the plaintiffs ask the court to declare that the City of Springfield (“City”) under the guise of an annual trash collection fee is in fact imposing an illegal tax on property owners. The plaintiffs petition the court to enter interlocutory and permanent orders enjoining the City from engaging in an alleged illegal revenue raising scheme. The plaintiffs are ten property owners who pay real estate taxes to the City. Thus they have standing to bring this action, since the issue at bar falls comfortably within the provisions of General Laws c. 40, §53.[1]
Based upon the submissions of the parties and an analysis of the applicable law, I find on an interlocutory basis that the plaintiffs proved that the City’s trash collection fee (“trash fee”) is substantially a tax rather than a fee. Southview Co-op. Housing Corp. v. Rent Control Bd. of Cambridge, 396 Mass. 395, 403 (1985). The Massachusetts Constitution does not grant independent powers to cities and towns to tax its inhabitants. Silva v. City of Fall River, 59 Mass.App.Ct. 798, 800 (2003), citing Greater Franklin Developers Ass’n. v. Town of Franklin, 49 Mass.App.Ct. 500, 502 (2000). Since the plaintiffs have shown a reasonable likelihood of success on the merits on their claim that the City has imposed an illegal tax on its taxpayers and also shown that any failure to prevent the City from pursuing collection of the illegal tax will adversely affect the public and will substantially erode the public interest, the court would be derelict if it did not impose a preliminary injunction against the City’s collection of the trash fee.
In general, a tax “is a revenue-raising exaction imposed through generally applicable rates to defray public expenses.” Opinion of the Justices to the House of Representatives, 393 Mass. 1209, 1216 (1984). However, municipalities can impose fees for the use of municipal services provided the fees meet specific criteria and can impose regulatory fees which are based on the police power to regulate certain activities or enterprises. Silva v. City of Fall River, 59 Mass.App.Ct. at 800.
The law is quite direct in providing the analysis that distinguishes whether a municipal monetary charge is an impermissible tax or a permissible fee. The modern seminal case in Massachusetts which sets forth the analytical factors is Emerson College v. Boston, 391 Mass. 415 (1984). Both parties in the case at bar rely heavily on the Emerson factors, as well as on the subsequent appellate cases that apply the factors. In Emerson, the Supreme Judicial Court invalidated a statute that permitted the City of Boston to impose a charge for municipal fire protection against the owners of buildings whose structures, due to the nature of their construction, size and the like, would require augmented public fire protection services in the event of a fire. The high court stated that valid municipal fees “share common traits that distinguish them from taxes: [ 1 ] they are charged in exchange for a particular governmental service which benefits the party paying the fee in a manner not shared by other members of society; [2] they are paid by choice, in that the parly paying the fee has the option of not using the governmental service and thereby avoiding the charge; and [3] the charges are collected not to raise revenues but to compensate the governmental entity providing the services for its expenses.” Emerson College v. Boston, 391 Mass. at 424-25.
The Springfield trash fee runs afoul of the second and third factors of the Emerson analysis, thus effectively making the trash fee an illegal revenue raising tax. In order to see the fault lines, a brief description of the temporary governance structure of Springfield and the history and ultimate order that resulted in the illegal trash assessment is appropriate. A note of caution is necessary here. It must be remembered that this decision relates only to the preliminary stages of the lawsuit. The court’s decision is by necessity based on the limited proffers of the parties in the initial pleadings and the submissions offered during the preliminary injunction hearing. Trial on the merits is yet to occur and that may lead to a very different result.
The City of Springfield has suffered through a staggering financial crisis for well over a decade. The *673 causes are not germane to this decision. In 2004, the legislature enacted Chapter 169 of the Acts of 2004 (“the Act”), the latest in a series of legislative efforts to stabilize the City’s precarious financial condition and avoid the specter of bankruptcy. Essentially the Act suspended the powers of the Mayor and the City Council and to some extent the School Committee to manage the City in accordance with its Plan A form of government. Instead the Act created the Springfield Finance Control Board (the Board) and vested it with extraordinary powers. In a general sense, all of the traditional Plan A powers of the Mayor and the City Council were placed under the exclusive control of the Board, along with the extraordinary powers granted by the legislature that exceed the powers of any mayor, town manager, city council or other municipal legislative body in the Commonwealth. For example, the Board has the power “to alter or rescind any action or decision of any municipal officer, employee, board or commission . . .” (Section 4(18) of the Act).
The Board consists of five members: the mayor, the president of the city council and three members designated by the Commonwealth’s Secretary of Administration and Management. In addition, there is an executive director of the Board. Presently, the Executive Director is Mr. Phillip Puccia.
Historically the City’s Department of Public Works (“DPW’) collected normal household refuse and some commercial refuse without charging a fee for its services. The cost of the collection was contained in the annual budget and paid for through the real estate tax revenue. Indeed, the cost of collection is still contained in the City’s 2007 Fiscal Year budget, but more about that shortly. Chapter 7.16 of the city ordinances regulates the storage, collection and disposal of solid waste. The ordinance was in effect long before the emergence of the Control Board. As refuse pick-up equipment became more automated, the city ordinance was amended to provide for “automated collection” of non-bulky refuse. Essentially, this automated process is accomplished through the use of specialized containers that are designed so that a hoist on a city refuse truck can automatically grab hold of the container, empty its contents and set it back onto the ground in an upright position. When the automated system went into effect in Springfield about ten years ago, the City provided each household with a container. There was no charge for the container. However, its ownership remained with the City and if the occupants moved the container was to be returned to the DPW or transferred to the new occupants for their use. If a household wanted extra containers, they had to pay the City for them and the City did not retain any ownership rights in the extra containers. The ordinance provides that the specialized containers are the only type of containers that can be used in certain areas of the City, presumably because of public health or terrain issues. Otherwise, the DPW would also pick up normal refuse stored in common trash barrels.
On June 27, 2006, the Control Board issued “Executive Order #8-11-04,” entitled “An Executive Order Implementing a Fee for Solid Waste Collection Services, As Amended.” The Executive Order states that “in order to defray the costs of solid waste collection services” in the City, the Board was establishing an annual fee of Ninety Dollars ($90.00) for each city-provided container per dwelling or commercial unit which receives refuse pick-up services from the City. The fee was effective on September 1, 2006. It is payable in four installments per fiscal year, unless the user wants to pay it in one lump sum. If the fee and late charges, if any, are not paid within thirty days from the billing date then such unpaid amounts “shall become a municipal charge against the owner” of the unit in question. Additionally, the order mandates that unpaid fees are a lien against the dwelling or commercial unit and are subject to levy. A 25% discount is provided for owners of single-family homes who are blind or indigent or 65 years of age or older or who are veterans with a war-service connected disability.
The fee is mandatory unless the City grants an exemption. The Board in its pleadings and argument refers to the exemptions as “opt out” provisions. The Executive Order states, that the Ciiy will grant an exemption for 1. An owner who provides proof that “such owner hauls its own solid waste, including yard waste, or who has hired a private hauler, who has all the necessary licenses and permits from the City, to haul such waste.” 2. An owner who returns additional city containers, with the exception that the first container remains at the location. Sharing of trash containers is prohibited. 3. Also exempted are properties owned by governmental agencies, provided they have existing city trash service. However properties owned by a housing authority are not exempt from the fee.
With this background in mind we reach the substance of the question - Is the Ninety Dollar trash fee an illegal tax? For Fiscal Year 2007 there is no question that it is a tax. As it applies to ensuing fiscal years, it is at least a fee/tax hybrid or, for the more literary minded, a “chimera,” as that word is used in the circumstances attendant in the Emerson case. Emerson College v. Boston, 391 Mass. at 419.
Applying the Emerson factors to the Executive Order and interfacing that Order with Chapter 7.16 of the City’s ordinances, the fee meets the first criteria of Emerson. Namely, trash pick-up certainly qualifies as a public service and the pick-up fee benefits the fee payer in a manner not shared by other members of the City who do not participate in the City trash service. From a legal point of view, the Executive Order case goes downhill from there.
The second criteria of Emerson is that a fee, as opposed to a tax, is paid as a matter of choice, “in that the party paying the fee has the option of not utilizing *674 the governmental service and thereby avoiding the charge.” Emerson College v. Boston, 391 Mass. at 424-25. The language of the Executive Order on this point is troublesome to say the least. A common sense reading of the Order makes it clear that if a customer was utilizing the City’s trash pick-up services at the time the Control Board ordered the imposition of the annual Ninety Dollar per container fee, the choice of whether or not the customer continued to use the City’s trash pick-up services was primarily in the control of the City rather than the customer. Under the Order the customer is not free to just give the Cily back its container and walk away. At the very least, the customer must provide proof that he or she will haul their own solid waste. If the proof, which is not defined in the Order, does not satisfy the Board or its designee presumably the customer cannot discontinue his or her trash pick-up services with the City. Likewise, if the customer has arranged for a private hauler, that is not good enough to free oneself from the city’s trash program, unless the hauler has all the necessary permits and licenses required by the City. Undoubtedly, public health interests and public environmental interests support public licensure requirements for trash haulers, but that does not give the City a right to hold a homeowner hostage to the City’s trash pick-up program because the proposed hauler does not meet applicable licensure requirements. The remedy for that type of infraction is the imposition of appropriate fines and other penalties on the miscreant trash hauler and, depending on the circumstances, on the hauler’s customer. Indeed the City of Springfield highly regulates private haulers and provides for penalties in the event of non-compliance (Chapter 7.17 of the Ordinances of the City of Springfield). The opt-out provision is coercive, essentially leaving the customer at the mercy of the City in deciding whether it will agree to stop picking up the customer’s trash. Thus, the opt-out provision is strongly indicative of an impermissible tax rather than a permissible fee.
The third and final factor of the Emerson analysis is whether “the charges are collected not to raise revenues but to compensate the governmental entity providing the services for its expenses.” Emerson College v. Boston, 391 Mass. at 425. Unquestionably, the purpose of the trash fee for the 2007 Fiscal Year is to raise revenue not to compensate the City for trash pick-up. The City’s budget for 2007 includes solid waste collection. Thus the taxpayers are already paying for the trash pick up when they pay their real estate taxes for the current fiscal year. The City’s defense to this obvious fact is inexplicable. Indeed a portion of Executive Director Puccia’s July 31, 2006 letter to State Representative Cheryl A. Coakley-Rivera can be fairly, but not necessarily, read as indicating that the trash fee will assist in replacing certain non-recurring revenue used in the FY 2007 budget.
It is troubling that the payments already received have been included in the City’s General Fund. This is usually indicative of an impermissible tax, because the “fee” once included in the general fund is available to defray costs unrelated to the use for which the fee was supposedly charged. Berry v. Danvers, 34 Mass.App.Ct. 507, 513 (1993). However, the City has carefully tracked the trash payments received to date and the City Auditor has established special measures to earmark the funds, so that they can be transferred into a separate enterprise fund once the procedure for the establishment of that fund is completed. See Nuclear Metals, Inc. v. Low-Level Radioactive Waste Mgmt. Bd., 421 Mass. 196, 207 (1995), and Opinion of the Justices, 393 Mass. at 1222. This reasonable effort to initially earmark the payments that have already been made does not overcome the strong showing at this early stage that the trash fee is in fact an impermissible tax.
What is particularly perplexing is why the Board, if it deemed a trash fee was necessary, used such a convoluted procedure that doomed its desired goal of establishing a fee. In all likelihood, the Board can establish a trash fee, but it has to do so within the confines of the law. The Act did not empower the Board to ignore the Commonwealth’s constitutional strictures on taxation. If it wants to create and impose a fee, all it has to do is follow the Emerson mandates.

ORDER FOR ENTRY OF PRELIMINARY INJUNCTION

For the reasons stated herein, it is ORDERED that a preliminary injunction issue prohibiting the defendants from collecting or attempting to collect from any individual or entity the annual Trash Fee established by “Executive Order #8-11-04" and entitled "An Executive Order Implementing a Fee for Solid Waste Collection Services, As Amended" which was issued on June 27, 2006 by the Springfield Finance Control Board. The City Auditor of Springfield shall forthwith account for any “trash fee” payments received as a result of “Executive Order #8-11-04 and provide a written accounting of same to the court no later than December 4, 2006. The Board shall forthwith cause any trash fee payments received as a result of "Executive Order #8-11-04" to be segregated from all other funds and accounts of the City and shall further deposit the payments in an interest bearing account. The Board shall forthwith send notice by first class mail to all individuals and entities who were charged the trash fee established by Executive Order #8-11-04 that the Order is suspended and the individual or entity is not to make payment of the trash fee to the City unless the court otherwise orders in the future that such payment is to be made in accordance with the Executive Order #8-11-04. In the event the court does order such payment to be made in the future, the individual or entity responsible for the payment shall not be charged for any late payment resulting from this preliminary injunction. The Board is further preliminarily enjoined from placing a lien on any property *675 for failure to pay the trash fee established by Executive Order #8-11-04.

SCHEDULING ORDER

The parties, through counsel, are to appear before the court on Tuesday, December 4, 2006 for the purposes of scheduling trial on the plaintiffs complaint.

 General Laws c. 40, §53 provides as follows: “If a town, regional school district, or a district as defined in section one A, or any of its officers or agents are about to raise or expend money or incur obligations purporting to bind said town, regional school district, or district for any purpose or object or in any manner other than that for and in which such town, regional school district, or district has the legal and constitutional right and power to raise or expend money or incur obligations, the supreme judicial court or superior court may, upon petition of not less than ten taxable inhabitants of the town, or not less than ten taxable inhabitants of any town in the regional school district, or not less than ten taxable inhabitants of that portion of a town which is in the district, determine the same in equity, and may, before the final determination of the cause, restrain the unlawful exercise or abuse of such corporate power.”