Ralph Aiello *vs*. Commissioners of the County of
Dukes County & another.[1]

No. 92-P-2.

Dukes County. March 5, 1993. - August 17, 1993.

Present: Kass, Kaplan, & Greenberg, JJ

*County*, Service fees. *Alarm Systems*.

A charge assessed to an alarm company by a public municipal communi-
cations center for the dispatch of fire, police, or ambulances in response
to the company's report of alarms was a lawful fee, and not a tax,
where the alarm company received services different from those availa-
ble to the public at large, where the use of the communications center
by the alarm company was a matter of choice, and where the assessed
charge represented an approximation of the cost of providing the partic-
ular services rendered. [153-154]

Civil action commenced in the Superior Court Depart-
ment on July 8, 1991.

The case was heard by *John Paul Sullivan*, J.

*Charles A. Morano* for the plaintiff.

*William M. Healy* for the defendant.

Kass, J. Ralph Aiello is the proprietor of Electronic Secur-
ity Systems (ESS), which installs, maintains, and monitors
alarm systems on Martha's Vineyard, largely, although not
exclusively, in residences. If the devices installed by ESS de-
tect an intruder, a fire, or a medical emergency, they trigger
a signal to an ESS monitoring station located in Hyannis. An
operator at the monitoring station then telephones the alarm
by category (i.e., whether fire, intrusion, or medical) to the
County of Dukes County Communications Center, a public
facility located at the Martha's Vineyard airport. The com-
munications center is expected to follow up on the report of

---

[1]Sheriff of the County of Dukes County.

an alarm and does so — frequently by dispatching fire, police, or ambulance equipment from around the county to the point of alarm.

Since 1988, the county has charged alarm system businesses or their customers fees for the follow-up services of the communications center. Aiello protests that the county's charges are not fees but an unlawful tax. A judge of the Superior Court, who wrote a careful memorandum of decision, considered the criteria enumerated in *Emerson College* v. *Boston*, 391 Mass. 415, 424-425 (1984), and its progeny, and determined that the fees imposed by the county were, indeed, fees and not a tax. We affirm.

The dispute is not about the reasonableness of the county's fees but whether there ought to be any fee at all. ESS argues that when the dispatcher at the communications center answers a telephone call from ESS, what the dispatcher then does is no different from what she or he would do in response to any call for help from an inhabitant of the island, viz., to diagnose the problem and dispatch help, if needed.

A framework for analysis of the fee or tax question, as indicated above, was described in *Emerson College* v. *Boston*, 391 Mass. at 424-425. Fees are distinguishable from taxes in that 1) they charge for a particular service that citizens as a whole do not necessarily receive; 2) the service ·fee is a matter of choice, i.e., the citizen could obtain the service offered by the government from a private source or not at all; and 3) the charges represent a recovery for the cost of offering the service, rather than a general revenue raising device. In *Emerson*, for example, the charge was for fire protection, a service all citizens receive and which the body politic has an interest in providing for the general good. A citizen could not choose to refuse fire protection because that person's neighbors have an interest in the fire not spreading. By contrast, the harbormaster of Beverly could assess a mooring fee. All the citizens of Beverly did not, by wide measure, have boats to moor. Those who did could opt to moor their boats in waters other than those of Beverly harbor. The fees for the harbor moorings helped defray harbormaster service.

*Commonwealth* v. *Caldwell*, 25 Mass. App. Ct. 91, 95-97 (1987).

Other examples are illuminating. *Bertone* v. *Department of Pub. Util.*, 411 Mass. 536, 548-550 (1992), decided that a "hook-up" charge for new or expanded service from a municipal power company met the particularity, choice, and cost reimbursement criteria. Sewer use charges were held particularized in *Winthrop* v. *Winthrop Hous. Authy.*, 27 Mass. App. Ct. 645, 647 (1989), because, on the record presented, property owners apparently could avail themselves of alternative (if less convenient) sewage disposal methods. The charge was related to the amount of use, i.e., meant to defray a cost of maintaining system capacity. On the other hand, in *Berry* v. *Danvers*, 34 Mass. App. Ct. 507, 509-513 (1993), property owners in the town were bound to hook up with a common sanitary sewer if accessible to, and adjoining, the property. We held that, in the circumstances, there was a general need, rather than a need peculiar only to certain citizens; the charges exacted were related to a town-wide sewer system improvement project; the money from the charge under consideration was going into the town's general fund. In light of those characteristics, we determined that the "fees" charged in connection with the town's sewer connection permit program were an unlawful tax.

In the case before us there is a difference between the services that the communications center makes available to the public at large and ESS. The trial judge found (and the record supports him) that when a citizen called the communications center directly, the dispatcher was generally able to identify specifically what the trouble was and to dispatch useful assistance. The telephone message from an ESS monitor said only that there had been an electronic signal of trouble at a location, without stating the trouble's precise nature or severity. Without further calls to the source of trouble or to neighbors, the dispatcher could not know whether the occasion called for a doctor or an ambulance; for a police car or for someone to close a front door unintentionally left ajar. Of the electronically triggered calls to the com-

munications center, a high percentage were false alarms induced by system or user error. The alarm system business had a particular need for services of an investigatory nature not required by the island population as a whole.

ESS and businesses like it could choose to use the communications center or to provide their own personnel to follow up on electronic alarm signals. By using the communications center, the electronic alarm services were able simultaneously to promote their businesses (i.e., to tell customers we communicate with a communications center that the sheriff maintains with knowledgeable personnel around the clock) and to save the expense of buying or providing that service independently. The fees to be paid by electronic alarm businesses did not purport to defray all the cost of running the communications center. Rather, they represented a crude estimate of the value of the particular service rendered by the communications center to those businesses. There was no showing that the fees exacted were "significantly and consistently in excess of the cost of providing the services." See *Commonwealth* v. *Caldwell*, 25 Mass. App. Ct. at 97.

The complaint of ESS sought a declaration of rights. The judgment which was entered in the case declared that the charges of the county commissioners were lawful fees and that, on account of those fees, ESS owed the county $4,887 for fiscal year 1990; $5,874 for fiscal year 1991; and $19,500 for fiscal year 1992. In its brief on appeal, ESS states that it has not agreed to pay the fees for fiscal years 1990 and 1991. Agreement by the user is not required. ESS was informed in 1990 that the fees set by the county commissioners as to any electronic alarm business which used the communications center were to be paid directly by the business. The burden is on the user to establish that the fee is improper as to its nature or amount. See *Southview Co-op. Hous. Corp.* v. *Rent Control Bd. of Cambridge*, 396 Mass. 395, 403 (1985); *Commonwealth* v. *Caldwell*, 25 Mass. App. Ct. at 94. ESS has not met that burden.

*Judgment affirmed.*