DONALD BAKER, trustee, & others[1] *vs.* DEPARTMENT OF
ENVIRONMENTAL PROTECTION & others.[2]

No. 94-P-1007.

Suffolk. October 18, 1995. - November 22, 1995.

Present: PERRETTA, KASS, & IRELAND, JJ.

*Wetlands Protection Act. Zoning*, Wetlands. *Administrative Law*, Regula-
tions, Agency's authority. *Regulation. Constitutional Law*, Taxation.

A Superior Court judge correctly concluded that the charges paid in con-
nection with the filing of notices of intent to alter wetland pursuant to
G. L. c. 131, § 40, and regulations thereunder, were lawful fees and not
unlawful taxes, where the charges were not compulsory, were in ex-
change for government services benefiting those who paid the fee, and
did not operate to raise revenue but rather offset the costs of the ser-
vices. [444-447]

CIVIL ACTION commenced in the Superior Court Depart-
ment on June 29, 1989.

The case was heard by *Margot Botsford*, J., on motions
for summary judgment.

*James D. McKenna* for the plaintiffs.

*Peter Sacks*, Assistant Attorney General, for the defend-
ants.

KASS, J. Landowners who file a notice of intent to develop
wetland under G. L. c. 131, § 40 (the wetlands protection
act), are required by statute and regulation to pay a filing fee
"[t]o defray state and local administrative costs." G. L.
c. 131, § 40, as appearing in St. 1989, c. 287, § 54. The

---

[1]John T. Mahoney, trustee (with Donald Baker) of the Edmund
Corrigan Road Realty Trust; Michael DiBitetto, trustee of the MJS
Realty Trust; and the Home Builders Association of Massachusetts, Inc.

[2]The Commissioner of the Department of Environmental Protection, the
Secretary of Environmental Affairs, the Secretary of Administration and
Finance, and the Executive Office for Administration and Finance.

plaintiffs brought an action seeking a declaration that the fees they had paid when applying for permission to develop wetland were unauthorized and unconstitutional taxes masquerading as fees. A judge of the Superior Court, in a detailed and carefully reasoned memorandum of decision, determined that the charges paid in connection with the filing of notices of intent to alter wetland[3] were, indeed, lawful fees, not unlawful taxes. We affirm.

The structure of the charges[4] appears in two places. The first is in 310 Code Mass. Regs. § 10.03(7) (1994),[5] which sets out the occasions when notice of intent and similar fees must be paid, and whether to pay the local conservation commission or the Department of Environmental Protection (DEP). The second provision appears in 801 Code Mass. Regs. § 4.02(310) (1994), which sets out the actual amount of charges in connection with various wetland filings.

What characteristics cause a charge to be a fee rather than a tax were discussed extensively in *Emerson College* v. *Boston*, 391 Mass. 415, 424-425 (1984), and most recently rehearsed in *Nuclear Metals, Inc.* v. *Low-Level Radioactive Waste Mgmt. Bd.*, 421 Mass. 196, 201-202 (1995).

First, is the charge levied "in exchange for a particular governmental service which benefits the party paying the fee in a manner 'not shared by other members of society[?]' " *Emerson College* v. *Boston*, 391 Mass. at 424, quoting from *National Cable Television Assn.* v. *United States*, 415 U.S. 336, 341 (1974). Members of the public do not commonly

---

[3]If a person doubts whether a notice of intent must be filed, the person may file a request for determination of applicability with the conservation commission, asking the commission to determine if G. L. c. 131, § 40, is applicable and thus whether a notice of intent must be filed.

[4]Both the statute, G. L. c. 131, § 40, and the regulations promulgated under the statute refer to the charges as fees. We owe deference to the legislative characterization of a charge but, ultimately, determining whether a charge is a fee or a tax depends on how the charge operates, rather than on how the statute or regulation describes it. *Emerson College* v. *Boston*, 391 Mass. 415, 424 (1984).

[5]We refer to the current effective regulation which, for purposes of our analysis, has not changed materially from the regulation in effect in 1989, when the plaintiffs brought their action.

undertake to develop wetland. Those particular members of the public who also own wetland may undertake to develop it in expectation, generally, of gaining an economic benefit. Protection of wetland is a public benefit, but the developers are the persons who require a permit to develop wetland in compliance with G. L. c. 131, § 40. See *Nuclear Metals, Inc., supra* at 204. In return for financial benefit, a landowner shoulders financial burdens of the government associated with protecting wetland from adverse development.

Second, is the charge compulsory or a matter of choice? Owners of wetland pay the filing and processing fees by choice; i.e., the charge is made only if they opt to use the government services incident to development of wetland. The landowners are no more compelled to pay the fees than they are compelled to develop their land. See *Nuclear Metals, Inc., supra* at 205. The requirement of choice does not focus on whether it is purely voluntary, but whether the charge benefits those regulated in a manner distinguishable from the benefits at large. *Id.* at 205-206. Here, the cost of regulation develops in response to a State policy designed to prevent harm to the general public by the destruction of wetland. See *Southern New England Conference Assn. of Seventh-Day Adventists* v. *Burlington*, 21 Mass. App. Ct. 701, 706 (1986). A regulatory fee imposed by an agency "may serve regulatory purposes directly by, for example, deliberately discouraging particular conduct by making it more expensive." *San Juan Cellular Tel. Co.* v. *Public Serv. Commn. of P.R.*, 967 F.2d 683, 685 (1st Cir. 1992), cited with approval in *Nuclear Metals, Inc., supra* at 202.

Third, does the charge operate to raise revenue or to offset the cost of governmental services? As to the challenged fees, the Legislature in G. L. c. 131, § 40, authorized the filing charges for the purpose of defraying State and local administrative costs. To that end, an agency may charge fees that offset general agency expenses, as well as the specific costs of the service in relation to each person charged a fee. *Southview Co-op. Hous. Corp.* v. *Rent Control Bd. of Cambridge*, 396 Mass. 395, 403-404 & n.5 (1985). We look not

at each specific service provided and the corresponding fee charged to that service, but rather "with a view to reimbursing the [governmental agency] for all expenses imposed upon it by the business sought to be regulated." *Emerson College v. Boston,* 391 Mass. at 425 n.16 (citations omitted). *Nuclear Metals, Inc., supra* at 207. In any event, there is ample support in the record for the conclusion of the Superior Court judge, based on a statement of agreed facts, that the aggregate revenue the DEP received in connection with filings under G. L. c. 131, § 40, had not covered the actual costs associated with the administration of that statute. *San Juan Cellular Tel. Co.,* 967 F.2d at 687.

*Judgment affirmed.*