Doerfer, J.
INTRODUCTION
The plaintiff real estate developers filed the present suit against the Town of Franklin challenging the constitutionality of the Town’s imposition of various real estate development “user” and “impact” fees. This matter is before the court on various motions by the parties for summary judgment pursuant to Mass.R.Civ.P. 56. For the reasons discussed below, the plaintiffs’ motion for partial summary judgment with respect to the sprinkler/hydrant connection fee and schools impact fee is ALLOWED in part and DENIED in part and the Town’s cross-motion for partial summary judgment is ALLOWED in part and DENIED in part. Further, the Town’s motion for summary judgment with respect to the sewer system entry fee, water system entry fee and lift station donation is DENIED and the plaintiffs’ motion for a continuance pursuant to Rule 56(f) is ALLOWED.
BACKGROUND
The undisputed facts as taken from the summary judgment record are as follows. The Town of Franklin (the Town) is one of the fastest growing communities in Massachusetts. From 1980 to 1995, the Town’s population increased 41%, from 17,500 to 25,000. During this period, the number of housing units in the Town doubled and three million square feet of new commercial and industrial space was built. Moreover, as of 1995, the Town had the capacity to add up to 4,500 dwelling units and over 6 million square feet of commercial and industrial space. It is estimated that by the year 2000, the Town’s population will increase by almost 6,000, and more than 2,000 new housing units will be built.
On August 22, 1990, Franklin’s Town Council (Town Council) voted to adopt Bylaw Amendment 90-192 which amended Chapter 139 of the Town Code, “Sewers,” to require that whenever a lift station[3] is necessary to provide sewer service to a property, the developer must deposit in a Town special gift account:
an amount calculated by the Town administrator to earn interest sufficient to fund the projected annual costs of service, maintenance, repair and parts replacement for each individual lift station over the expected lifetime of buildings served by such lift station . . . The donation of said gift is to be made prior to issuance of the first building permit.
Alternatively, if a developer chooses not to deposit funds into the special gift account and turn the lift station over to the Town for service, the developer may build and maintain the lift station without assistance from the Town.
Further, on May 2, 1990, the Town Council voted to adopt Bylaw Amendment 90-181 which amended Town Code Chapter 179, “Water,” to require .the owners of commercial and industrial properties to pay an annual sprinkler/hydrant connection fee “for the availability of water capacity to sprinkler systems, standpipes and private fire hydrants.” The Bylaw Amendment set the fee at $200 for a four inch pipe, $300 for a six inch pipe, $400 for an eight inch pipe, and $500 for a ten inch pipe. Subsequently, Bylaw Amendment 95-285 changed the annual sprinkler/hydrant fee to a flat $400 for all commercial or industrial properties. According to Keith Hoyle (Hoyle), the Chief of the Franklin Fire Department, and Ronald Massey (Massey), the Director of the Franklin Department of Public Works, there is no requirement that commercial and industrial buildings connect to the Town’s water system. Thus, only those property owners who have installed a private fire service connection to the Town’s water mains in order to provide fire flow capacity to a sprinkler system and/or private hydrants and standpipes are charged this fee.
Thereafter, on March 16, 1994, the Town Council voted to adopt Bylaw Amendment 94-257[4] which amended Chapter 82, Appendix C of the Town Code by establishing a $500 water system entry fee “charged for capital improvements necessitated by connecting a new user to the water system.” This fee is charged at the time of issuance of a building permit when a property owner applies to the Town to connect a new home to the public water supply system, and covers the cost of installing service connection pipes from the public water main to the individual dwelling, including engineering, inspection, metering and clerical expenses. According to Massey, there is no requirement that a new residence be connected to the Town system: a property owner is free to install a private well instead. The water system entry fees are deposited in the Town’s capital well construction and equipment cost fund and are appropriated for improvements to the municipal water supply system, including water mains.
Bylaw Amendment 94-257 also established a $500 sewer system entry fee charged to “recover the Town’s share of the costs of building replacement capacity at the sewage treatment plant, as well as the lines and pump stations leading to the plant which are necessitated by the new user’s connection to the system.” The *482 Town’s sewage is treated at a multi-town facility owned by the Charles River Pollution Control District. The Bylaw Amendment mandates that sewer system entry fees “shall be placed in the Town’s sewer construction and equipment cost fund to improve and develop the municipal waste water system capacity." The fees are then appropriated for capital improvements necessitated by the connection of additional buildings to the Town’s sewer system. On April 3, 1995, the Town Council voted to adopt Bylaw Amendment 95-290 which further amended Chapter 139 of the Town Code, “Sewers,” by requiring that “all users proposing to connect or discharge into the [Town sewer system] shall obtain a sewer connection permit from the town before connecting to or discharging into the facility.” Pursuant to the amendment, all permit applications must be accompanied by the appropriate sewer system entry fee as set forth in the Charges and Fees Schedule located at Exhibit B to Chapter 139.
In 1995, the Town retained Applied Economic Research, Inc. (AER) to study the feasibility of establishing impact fees for schools, fire and emergency medical services, parks, and roads in response to the rapid growth of the population and the increasing demands placed on the Town’s infrastructure. After reviewing a variety of studies completed in the Town during the past decade, AER prepared an August 1995 report entitled “Franklin Impact Fee System” (the Report). The Report projected that by the year 2003, 1,000 new students would enter the Town’s school system. Although the Town had just completed a new $18.5 million school in the Fall of 1995, the Report concluded that construction of a $12 million elementary school would be necessary within the next decade. The Report further projected that by the year 2000, the Town’s elementary schools would have a deficit of 250 places and the middle school would have a deficit of 70 places.
Based on these statistics, AER derived a school impact fee by estimating the average number of school children per housing unit for various types of housing units in the Town and creating multipliers for each type of unit. The result was a multiplier of .68 for each single family unit, .25 for each condominium unit and .16 for each garden/multifamily unit. AER then calculated a per student cost of $17,500 for new elementary/middle school construction and a per student cost of $20,644 for new high school construction. After accounting for the fact that the state assumes 69% of local school construction costs and that new construction will pay for existing debt service currently outstanding through the property tax, AER calculated the maximum supportable impact fee at between $700 per condominium unit and $3,600 per single family unit.
Further, AER projected that by the year 2000, over 2,000 new housing units would be built in the Town and by the year 2003, water use would rise from 972 million gallons to 1.2 billion gallons. The Report concluded that the Town’s water distribution system was overly taxed by growing demand such that expansion and replacement were necessary. In addition, the Report concluded that new wells were needed to safely accommodate additional growth in the Town.
Based on the Report, on November 1, 1995, the Town Council voted to adopt Bylaw 95-300 which amended the Town Code by adding a new Chapter 83 entitled “Impact Fees,” effective November 1, 1995. Chapter 83 established impact fees for schools and procedures for collecting said fees. Section 83-3 states:
No certificate of use and occupancy for any new or expanded residential building or structure containing the type of dwelling units set forth in the Fee Schedule of this Bylaw shall be issued unless and until the impact fees hereby required have been paid, unless exempted by this Bylaw.
Appendix A to Chapter 83 contains a fee schedule, which sets the schools impact fee at $2,500 for a single family home, $528 for a condominium unit and $726 for a rental unit in a multifamily dwelling. Pursuant to Section 83-3(B)(2) of the Bylaw, however, a fee payer may opt not to have the impact fee determined according to the fee schedule by preparing and submitting to the Town an independent fee calculation study for the particular development for which a certificate of use and occupancy is sought. Section 83-4 divides the Town into two school impact fee districts and establishes two School Impact Fee Trust Funds, one for each district. Money collected through the imposition of the fee is deposited into the appropriate trust account and is to be used “solely for the purpose of acquiring and/or making school capital improvements under the jurisdiction of Franklin and shall not be used for the maintenance or operation of existing facilities."
Plaintiff Greater Franklin Developers Association, Inc. (the Association) is an incorporated association of real estate developers organized under the laws of Massachusetts. Plaintiffs Dennis F. Marguerite, Francis A. Molla, John C. Colella, Sean Skahill and Anthony Marinella are members and directors of the Association. On December 4, 1995, the Association filed the present action seeking a declaration that the schools impact fee, sprinkler/hydrant fee, sewer system entry fee, water system entry fee and lift station donation are unconstitutional and unenforceable ex-actions, and seeking to recover damages in the amount of all invalid fees paid.
In 1995, plaintiff Marguerite paid the Town $9,500 in water system entry fees, while in 1996, he paid the Town $10,000 in schools impact fees, $16,500 in water system entry fees and $8,000 in sewer system entry fees. Further, Marguerite posted a $338,595 bond with the Town, $130,000 of which was paid to the Town to satisfy the lift station donation for the Cooks Farm Estates development. In 1995, plaintiff *483 Marinella paid the Town $100,000 to satisfy the lift station donation for the Prospect Heights development. Further, in 1996, he paid the Town $7,500 in schools impact fees, $8,500 in water system entry fees and $38,000 in sewer system entry fees. In 1995 and 1996, plaintiff Colella paid the Town $23,500 in schools impact fees, $6,500 in water system entry fees and $6,500 in sewer system entry fees. Finally, in 1996, plaintiff Molla paid the Town $2,500 in schools impact fees, $500 in water system entry fees and $500 in sewer system entry fees.
DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Community Nat’l. Bank v. Dawes, 369 Mass. 550, 553 (1976); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing parly’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991).
I. CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT WITH RESPECT TO THE SPRINKLERXHYDRANT CONNECTION FEE AND SCHOOLS IMPACT FEE
The Association argues that it is entitled to judgment as a matter of law with respect to both the sprinkler\hydrant connection fee and the schools impact fee because they fail to satisfy the three-prong test established by the SJC for distinguishing legally imposed fees from impermissible taxes. The Town, however, has filed a cross-motion for partial summary judgment with respect to these fees, contending that they'constitute valid user fees as a matter of law.
The burden of proving that a particular charge is not a proper fee, either in nature or amount, rests on those who challenge its legality. Southview Co-operative Housing Corp. v. Rent Control Board of Cambridge, 396 Mass. 395, 403 (1985); Aiello v. Commissioners of Dukes County, 35 Mass.App.Ct. 151, 154, rev. den., 416 Mass. 1105 (1993). The Association thus bears the burden of proof as to the invalidity of the Town’s sprinkler/hydrant connection fee and schools impact fee. The court is bound to treat with deference the legislature’s classification of a particular charge as a fee and in a doubtful case, the intention of the legislature as expressed in part through its characterization of the charge deserves judicial respect, especially where the constitutionality of the exaction depends on its proper characterization. Associated Indus. of Mass., Inc. v. Commissioner of Revenue, 378 Mass. 657, 667-68 (1979); Emerson College v. Boston, 391 Mass. 415, 424 (1984). Ultimately, however, the nature of a monetary exaction must be determined by examining its operation rather than its descriptive phrase. Thomson Elec. Welding Co. v. Commonwealth, 275 Mass. 426, 429 (1931); Emerson College v. Boston, supra at 424; Nuclear Metals, Inc. v. Low-Level Radioactive Waste Management Board, 421 Mass. 196, 201 (1995).
A tax is a revenue-raising exaction imposed through generally applicable rates to defray public expense. Opinion of the Justices, 393 Mass. 1209, 1216 (1984); German v. Commonwealth, 410 Mass. 445, 448 (1991). Fees share three common traits that distinguish them from taxes: they are charged in exchange for a particular governmental service which benefits the party paying the fee in a manner not shared by other members of society; they are paid by choice, in that the party paying the fee has the option of not utilizing the governmental service and thereby avoiding the charge; and the charges are collected not to raise revenue generally but to compensate the governmental entity providing the services for its expenses. Emerson College v. Boston, supra at 424-25; Nuclear Metals, Inc. v. Low-Level Radioactive Waste Management Board, supra at 202; Aiello v. Commissioners of Dukes County, supra at 152. The court must carefully analyze a challenged monetary exaction against these three criteria to determine its true nature.
A. FRANKLIN’S SPRINKLER/HYDRANT CONNECTION FEE
The Association first contends that the Town’s sprinkler/hydrant connection fee is not a proper fee but rather, operates as a tax. According to Bylaw Amendment 90-181, the annual sprinkler/hydrant connection fee is paid for “the availability of water capacity to sprinkler systems, standpipes and private fire hydrants within commercial or industrial properties.” The Bylaw provides that where a single water main enters such a property and serves both a sprinkler/standpipe and one or more private hydrants, only one sprinkler/hydrant connection fee shall be charged.
1. Particularized Benefit of the Service Provided
Fees are legitimate to the extent that the services for which they are imposed are sufficiently particularized to justify distribution of the costs among a limited group of beneficiaries or users of the services, rather than the general public. Emerson College v. Boston, supra at 425. The Association argues that the sprinkler/hydrant connection fee does not meet this standard because the “users,” commercial and industrial property owners, do not receive any benefit different in kind from residential users, to whom water capacity *484 for firefighting purposes is available without paying a separate fee.
In Emerson College v. Boston, the SJC analyzed an “augmented fire services availability” (AFSA) charge imposed by the city on any building for which the total fire fighting capacity necessary to extinguish a three-alarm fire exceeded 3,500 gallons per minute. Id., 391 Mass. at 419. The formula used by the city to determine whether a particular building met this standard included the square footage of the building, the number of stories, the fire resistance of the materials from which it was constructed, the use of the building, the combustibility of its contents, the density and hours of the building’s occupancy, and whether the building contained fire detection, suppression and smoke removal equipment. Id. at 421-22.
The Court found that the benefits of augmented fire protection were not limited to the owners of AFSA buildings, because the capacity to extinguish a fire in any particular building safeguards not only the private property interests of the owner, but also the safely of the building’s occupants as well as that of surrounding buildings and their occupants. Id. at 425-426. The Court noted that protection from fires has always been treated as a general function of government, Id. at 418, and stated:
In more sparsely populated areas, it may be possible to isolate private property interests in fire suppression from the property and safety interests of the public at large. In a large, densely populated city like Boston, “the prevention of damage to buildings by fire is an object which affects the interest of all inhabitants and relieves them from a common burden and danger.” Id. at 427.
The Court thus concluded that because the benefit of the augmented fire protection provided was not sufficiently particularized to those property owners paying the AFSA charge, the charge was not a proper fee but rather, operated as a tax. Id. at 426-27.[5]
Foremost, it should be noted that unlike Boston’s AFSA charge, which the city imposed in exchange for general fire protection services, including the cost of employing firefighters, overhead costs for fire stations, and the purchase, maintenance and deployment of firefighting equipment, the Town’s sprinkler/hydrant fee, collected by the Town Department of Public Works, is imposed in exchange for a much more specific service: the availability of fire flow water capacity to commercial and industrial properties.[6] The critical question is whether commercial and industrial property owners receive a service with respect to fire flow capacity different in kind from that received by the general public. According to Keith Hoyle, Chief of the Franklin Fire Department, and Ronald Massey, Director of the Franklin Department of Public Works, state and local fire codes require commercial and industrial buildings to have adequate fire fighting capabilities beyond that provided by public hydrants. Such capabilities may be met by installation of a chemical fire suppression system. Another option is to supplement the water flow capacity to the building through the use of sprinklers, private fire hydrants and other equipment and devices designed for buildings over a certain size.
Commercial and industrial property owners who choose this option must have an adequate water supply available for fire fighting purposes that is separate from their drinking water and sanitation supplies.[7] Nonetheless, commercial and industrial properties need not utilize the Town’s water supply system to meet their fire flow requirements. The source of water for fire flow may be a private well or connection to a fire pond, underground cistern or water system in another municipality. When commercial and industrial property owners choose to connect to the Town water supply system, however, the Town’s readiness to deliver fire flow to these properties requires additional supply wells and oversized water storage facilities and water mains, increased pumping and distribution capacity, and maintenance and administration beyond that required for residential fire flow capacity. The Town thus imposes a sprinkler/hydrant fee on commercial and industrial property owners connected to the Town’s water supply for fire flow purposes. This is precisely the group of users which receives the benefit of the service provided, the availability of sufficient water to meet the demands of their sprinkler systems and/or privately owned fire hydrants. Residential property owners, for whom public hydrants provide sufficient fire flow capacity, and those commercial or industrial property owners who utilize a chemical fire suppression system or alternative source of fire flow water are not required to pay the sprinkler/hydrant fee because they do not receive the service provided. Accordingly, this Court concludes that the benefits of the availability of adequate water capacity for fire flow purposes are sufficiently particularized to justify distribution of the cost among those commercial and industrial property owners who connect to the Town’s water supply system, satisfying the first prong of the Emerson College test.
2. Voluntary Payment
The second consideration in distinguishing a fee from a tax is that fees are paid by choice, in the sense that the party paying the fee has the option of not utilizing the governmental service at issue, thereby avoiding the charge. Emerson College v. Boston, supra at 415. The Town’s sprinkler/hydrant fee is voluntary because commercial and industrial property owners may choose not to utilize the Town’s water supply system to meet their firefighting capacity requirements, thereby avoiding payment of the fee. See
Winthrop v. Winthrop Housing Authority, 27 Mass.App.Ct. 645, 647 (1989) (concluding that annual charges for the use of a town’s common sewer system were voluntary where property owners were not re *485 quired by any health or safety measure to connect to the town sewer). Compare Berry v. Danvers, 34 Mass.App.Ct. 507, 512-513, rev. den., 415 Mass. 1105 (1993) (concluding that a sewer connection fee was mandatory rather than voluntary where the State Environmental Code, 310 Mass. Regs. §15.02(1), stated that “no individual sewage disposal system or other means of sewage disposal shall be located, constructed, altered, repaired or installed where a common sanitary sewer is accessible adjoining the property and where permission to enter such sewer can be obtained from the authority having jurisdiction over it”). See also Emerson College v. Boston, supra at 426 n. 17 (noting that Boston’s AFSA charge was coerced rather than voluntary because although a property owner could reduce the need for augmented fire protection by installing sprinklers, smoke detectors and smoke removal equipment, the calculation of whether a particular building required augmented protection also depended on factors such size and building materials over which the owner had no control). The sprinkler/hydrant fee thus meets the second prong of the Emerson College test.
3. Compensation for Services Rendered v. Revenue Raising
The final consideration in determining whether a monetary exaction operates as a fee rather than as a tax is whether it is collected to raise revenue generally or to compensate the governmental entity providing the services for its expenses. Emerson College v. Boston, supra at 424-25; Nuclear Metals, Inc. v. Low-Level Radioactive Waste Management Board, supra at 202. The fact that money obtained from a particular charge is not used exclusively to meet expenses incurred in providing the service at issue but is destined instead for a broader range of services or for a general fund, while not decisive, is of weight in indicating that the charge is a tax rather than a fee. United States v. Tax Comm’n, 421 U.S. 599, 606 (1975); Emerson College v. Boston, supra at 427. Thus, where a sewer connection charge was deposited into a general fund and made available for use in sewer projects other than just improvements and capacity expansion to accommodate new connections, the charge operated as a tax rather than a fee. Berry v. Danvers, supra at 513. However, an electrical connection charge did not implicate the taxation power where the funds collected were not added to a general fund for providing service to all customers, but were instead targeted to the new construction necessitated by new customers. Bertone v. Department of Public Utilities, 411 Mass. 536, 550 (1992). See also Nuclear Metals, Inc. v. Low-Level Radioactive Waste Management Board, supra at 207 (holding that an assessment was a valid fee where the money was placed into a separate Low Radioactive Waste Management Fund).
In addition to being earmarked for expenditures related to the services provided, fees are distinguishable from taxes in that fees are reasonably related to the anticipated cost of providing the services for which they are charged. Southview Co-operative Housing Corp. v. Rent Control Board of Cambridge, supra at 402 (concluding that a petition charge was a valid fee where it only covered the board’s reasonably anticipated costs of providing rent adjustments); Bertone v. Department of Public Utilities, supra at 550 (concluding that an electrical connection charge was a fee where the charge covered the incremental costs of general system improvements attributable to the provision of service to new customers and the cost of connecting new customers); Aiello v. Commissioners of Duke County, supra at 153-54 (concluding that a charge by an alarm company was a fee where the charge assessed represented an approximation of the costs of providing the particular services rendered); Baker v. Department of Environmental Protection, 39 Mass.App.Ct. 444, 447 (1995) (concluding that filing charge for a notice of intent to alter wetlands was a fee where the record showed that the money raised by the charge did not cover the government’s actual costs associated with that service).
In the present case, according to Town Comptroller Richard Mourey, the sprinkler/hydrant fees collected by the Town are credited to and kept in a separate Water Special Revenue Fund which is not part of the Town’s general fund. This money is then used to pay for the cost of providing and maintaining the additional capacity necessary for fire protection, including operations and maintenance expenses, debt service for supply, and storage and distribution facilities. Such earmarking of funds is indicative of a proper fee rather than the general revenue raising operation of a tax.
Nonetheless, the Association contends that the Town has failed to provide any record of the assumptions and calculations upon which the sprinkler/hydrant fee is based and thus cannot show that the fee is reasonably related to the anticipated cost of providing the availability of fire flow capacity to commercial and industrial properties connected to the Town’s water supply system.[8] The Association misconstrues the burden of proof on this issue, which lies with the party claiming that a charge is not a proper fee, either in nature or amount. Southview Cooperative Housing Corp. v. Rent Control Board of Cambridge, supra at 403; Aiello v. Commissioners of Dukes County, supra at 154. Consulting engineer Camp, Dresser & McKee, Inc. analyzed the Town’s provision of water and sewer services to its residents and retained Christopher Woodcock (Woodcock), the chair of the American Water Works Association’s Rates and Charges Subcommittee, to assist it in this task. According to Woodcock, the average annual cost to the Town of making water for fire flow available to commercial and industrial properties is $659 per private hydrant connection and $623 per sprinkler connection, as compared to the fee *486 of $400. The Association has failed to produce any Rule 56 materials contradicting Woodcock’s calculations or otherwise demonstrating that the $400 fee is improper.[9] It appears on the record that the sprinkler/hydrant fee is reasonably related to the cost of compensating the Town for its expenditures with respect to providing fire flow water capacity to commercial and industrial properties. Thus, based on the application of the Emerson College test to the present case, this Court concludes that the sprinkler/hydrant fee operates as a proper fee rather than as a tax. Accordingly, the Town of Franklin is entitled to judgment as a matter of law with respect to this fee.
B. THE SCHOOLS IMPACT FEE
The Association next contends that the Town’s schools impact fee fails to meet the Emerson College test and thus operates as a tax in violation of numerous Massachusetts constitutional and statutory provisions. Chapter 83, Section 83-2 of the Town of Franklin By-laws states:
In order to promote and protect the public health, safety and welfare, Franklin must expand its school systems if new development is to be accommodated without decreasing current standards. The imposition of impact fees ensures that development bears a proportionate share of the cost of capital facilities necessary to accommodate such development and to promote and protect the public health, safety and welfare.
Section 83-3 of the By-law states that the fees collected “shall be used solely for the purpose of acquiring and/or making school capital improvements under the jurisdiction of Franklin and shall not be used for the maintenance or operation of existing facilities.” A “school capital improvement” is defined in the By-law as “school planning, land acquisition, site improvements, buildings and equipment, but excludes maintenance and operation.”
1. Particularized Benefit of the Service Provided
The Association argues that the Town’s schools impact fee does not satisfy the first prong of the Emerson College test because the service provided, the expansion of the public school system, does not benefit the parties paying the fee in a manner not shared by other residents of the Town. As the party challenging the fee, the Association bears the burden of proving any benefit to members of the public. Bertone v. Department of Public Utilities, supra at 549 n. 12. The Town counters that the fact that existing residents with children in the school system will receive some “spillover” benefit from the expansion of the school system does not invalidate the imposition of the fee on those building new homes in the Town.
In Bertone v. Department of Public Utilities, the Hull Municipal Lighting Plant (HMLP) imposed a hook-up charge on customers seeking an electrical connection at a new location or expanded service at an existing location, based on a study that showed that residential growth was stressing the municipal facility and that the demand of new customers would soon exceed the capacity of the existing electrical system. 411 Mass. at 539-541. In determining that the charge was a proper fee rather than a tax, the SJC concluded that the fact that the system improvements financed by the hookup charge would incidentally benefit existing electrical users was not significant:
The hook-up charge is assessed only to new customers . . . who benefit from new or additional use of HMLP-supplied electricity after August 1, 1985 . . . The benefit of new or expanded service (including both the service itself and the new construction which will make it possible) is conferred only on those who connect to the system after August 1, 1985. The fact that system improvements will also serve existing HMLP customers is not significant because so far as the record shows, the product received and paid for by those customers— electrical service — remains unchanged . . . Thus, the new customers benefit in a manner not shared by existing customers. Id. at 549.
Similarly, in Nuclear Metals, Inc. v. Low-Level Radioactive Waste Management Board, where the Board imposed an assessment on waste generators to defray the cost of implementing the state’s waste disposal management plan, the court concluded that although the safe disposal of low-level radioactive waste is a public benefit, the benefit of the service provided was sufficiently particularized because it is generators of such waste, and not the general public, which require access to disposal facilities meeting state and federal standards. Nuclear Metals, Inc. v. Low-Level Radioactive Waste Management Board, supra at 204-05. See also Baker v. Department of Environmental Protection, supra at 446-47 (concluding that a fee for processing wetlands alterations permits was sufficiently particularized because although some benefit accrues to the general public from wetlands protection, the services at issue confer a financial benefit upon land developers in particular).
Thus, the Town is correct that the existence of spillover benefits to the general public from the payment of a fee will not invalidate it as a tax so long as fee payers receive some particularized benefit from the services provided. The critical point, however, is that any benefit to general public must be incidental or de minimis compared to the primary benefit received by those paying the fees. Bertone v. Department of Public Utilities, supra at 549 n.12; Morton v. Hanover, supra at 201-02. The Association contends that in contrast to the fee payers in Bertone, Nuclear Metals and Baker, the residents of new construction paying the schools impact fee do not benefit in a manner not shared by other residents of the Town; rather, the benefit received by fee payers is indistinguishable from that received by non fee payers.
*487 Clearly, the expansion of old school facilities and creation of new school facilities benefit all children in the school system and not just the children of the residents of newly constructed homes, because use of the expanded and/or new schools will not be limited to the children of fee payers. Moreover, in contrast to Bertone, it cannot be said in the present case that the product received by non-fee payers remains unchanged. Unlike electricity, which is fungible, newer, larger and better equipped school facilities are not the equivalent of older, smaller, outdated facilities. Expanded and newly-built school facilities not only increase the number of students the system can educate but also enhance the overall quality of the education provided. Education simply is not a product of the same nature as electricity, and expansion of a public school system is not the same as expansion of an electrical supply system.
The Town appears to argue that the expansion of the school system particularly benefits the residents of new construction paying the impact fee in the same manner that expansion of the electrical supply system benefitted new connectors in Bertone: it increases the capacity of the system so that additional members can join. The critical difference is that while the Hull Municipal Plant is not required to ensure that there is enough electricity for both existing users and new users seeking to connect to the system, the Town of Franklin is required by the Massachusetts constitution and by statute to accept the children of new residents into the public school system.[10] Thus, in the absence of any school impact fee, the Town is obligated to either educate the new children within existing school facilities, decreasing the quality of the service provided to children of old and new residents alike, or attempt to finance the expansion of the school system through general taxation or federal or state funding, benefiting the children of old and new residents alike. Given that the residents of newly built homes are entitled to have their children join the Town’s school system regardless of the existing capacity, they cannot be deemed to receive a particularized benefit for the Town’s provision of an expanded school system in exchange for the payment of the schools impact fee. Thus, it is difficult to discern how the residents of new homes construction paying the schools impact fee benefit in a manner not shared by other residents of the Town with children attending the public schools.
The Association further argues that the schools impact fee is not sufficiently particularized because some owners of newly-constructed homes in the Town who must pay the fee will receive no benefit at all from the service provided, the expansion of school facilities. Thus, as to those fee payers without children, the schools impact fee cannot be deemed to benefit the fee payer in a manner not shared by the rest of the Town. Conversely, a family with children who moves to the Town but purchases an existing home rather than building a new one is not required to pay a schools impact fee despite the fact that its children will utilize the school system and thus benefit from the service provided, expanded schools.
In response to this argument, the Town cites a Florida Supreme Court decision, St. Johns County v. Northeast Florida Builders Association, Inc., 583 So.2d 635 (Fla. 1991), which rejects similar arguments and upholds school impact fees as valid. The purpose and methodology of the Florida school impact fee are exactly the same as those of Franklin’s school impact fee.[11] As in the present case, a builders’ association challenged the fee as unconstitutional. In analyzing the validity of the school impact fee, the Florida Supreme Court applied the “dual rational nexus test” adopted by numerous jurisdictions in analyzing the validity of such fees. Id. at 637. Under this test, the government must first demonstrate a reasonable connection or rational nexus between the need for additional capital facilities and the growth in population generated by new residents. In addition, the government must demonstrate a reasonable connection between the expenditure of the funds collected and the benefits accruing to new residents: i.e., that the funds are specifically earmarked for use in collecting capital facilities to benefit those residents. Id.
In applying the first prong of this test to St. John’s school impact fee, the Florida Supreme Court stated:
The builders argue that because many of the new residences will have no impact on the public school system, the impact fee is nothing more than a tax insofar as those residences are concerned. We reject this contention as too simplistic. The same argument could be made with respect to many other facilities that governmental entities are expected to provide. Not all of the new residents will use the parks or call for fire protection, yet the county will have to provide additional facilities so as to be in a position to serve each dwelling unit. During the useful life of the new dwelling units, school-age children will come and go. It may be that some of the units will never house children. However, the county has determined that for every one hundred units that are built, forty-four new students will require an education at a public school. The St. Johns County impact fee is designed to provide the capacity to serve the educational needs of all one hundred dwelling units. We conclude that the ordinance meets the first prong of the rational nexus test.
Nonetheless, this Court finds the St. Johns decision unpersuasive for the simple reason that Florida’s requirement of a reasonable connection between the need for additional capital facilities and the growth in population generated by new residents does not even approach the rigorous Emerson College requirement that a service provided particularly benefit those paying a fee in a manner not shared by the general *488 public.[12] Because the residents of newly-constructed homes paying the fee do not receive a benefit from the expansion of the school system beyond that benefit received by all other residents, the schools impact fee does not satisfy the first prong of the Emerson College test for distinguishing a valid user fee from an improperly levied tax.
2. Voluntary Payment
The Town argues that the schools impact fee does not operate as a tax since the fee is paid by choice and may be avoided by not utilizing the governmental service at issue. The courts have concluded that even where the only way to avoid payment of a fee is to relinquish the right to develop land, said fee is voluntary so long as a property owner has the option of not paying it. A fee is not a tax even though it must be paid in order that a right may be enjoyed. Southview Co-operative Housing Corp, v. Rent Control Board of Cambridge, supra at 402; Bertone v. Department of Public Utilities, supra at 549; Baker v. Department of Environmental Protection, supra at 446. The Town is thus correct that the plaintiffs can avoid imposition of the schools impact fee by refraining from seeking building permits and building new homes in the Town of Franklin. The Association contends, however, that the fee is coercive rather than voluntary because new residents cannot avoid utilizing the service provided, “education,” because they are compelled to educate their children under the Commonwealth’s mandatory school attendance laws. This argument is disingenuous, because the plaintiffs are required to educate their children regardless of which town they build a home in. However, they are no more compelled to pay the schools impact fee than they are compelled to build a new home in the Town of Franklin. See Baker v. Department of Environmental Protection, supra at 446.
Nonetheless, the courts have established that the critical aspect of the requirement of choice does not focus on whether payment of a monetary exaction is purely voluntary but rather, on whether the services provided benefit those charged in a manner distinguishable from the public at large. Nuclear Materials, Inc., supra at 205-06; Baker v. Department of Environmental Protection, supra at 446. The voluntariness factor is not conclusive, and voluntariness of payment is “arguably only subsidiary to, and an additional manifestation of, the analytically more comprehensive factor, particularized rather than general public benefit.” Morton v. Hanover, supra at 202; Berry v. Danvers, supra at 512 n.6. Given that the occupants of newly constructed homes must pay the schools impact fee regardless of whether they use the service provided, that many residents will use the expanded school system without paying the fee, and that fee payers who actually use the school system benefit only to the same extent as non-fee payers, the schools impact fee lacks a particularized benefit and cannot be deemed to be a voluntary user fee. Just as the benefits of augmented fire protection in Emerson College were essential to the public welfare rather than being limited to the owners of certain buildings, the benefits of an expanded school system are not limited to those requesting new building permits in the Town of Franklin. Providing public schools ranks at the very apex of government functions. Wisconsin v. Yoder, 406 U.S. 205, 213 (1972). The public school system is a service which all residents of the Town receive equally and which the Town has an interest in providing for the general good. Because the benefit of the service provided in exchange for payment of the schools impact fee is not particularized to fee payers, the exaction operates as a tax and cannot be deemed to be a voluntary user fee.
3. Compensation for Services Rendered v. Revenue Raising
The Association concedes that the money raised through the schools impact fee is earmarked for expansion of the school system and that the fees are reasonably related to the actual cost to the Town of providing the necessary capital expenditures. Nonetheless, the SJC has clearly stated that the third prong of the Emerson College test need not be separately satisfied in order to strike down a purported fee as a tax. Emerson College v. Boston, supra at 427; Berry v. Danvers, supra at 513. Thus, based on the application of the Emerson College test to the present case, this Court concludes that the schools impact fee operates as a tax to defray the cost of a public benefit collected disproportionately from the owners of new residential construction, rather than as a proper fee payable in exchange for a benefit particularized to those building new homes in the Town.
The Association contends that given the schools impact fee’s true nature as a tax, its imposition by the Town violates a host of constitutional and statutory provisions. Foremost, under the Home Rule Amendment, a municipality such as the Town of Franklin:
may, by the adoption, amendment, or repeal of local ordinances or by-laws, exercise any power or function which the general court has power to confer upon it, which is not inconsistent with the constitution or laws enacted by the general court. .. and which is not denied, either expressly or by clear implication to the city or town by its charter. Mass. Const. Art. Amend. 2, §6, as amended by art. 89.
However, Section 7 provides:
Nothing in this article shall be deemed to grant to any city or town the power to . . . (2) levy, assess and collect taxes . . . provided, however, that the foregoing enumerated powers may be granted by the general court in conformity with the constitution and with the powers reserved to the general court by Section eight... Mass. Const. Art. Amend. 2, §7, as amended by art. 89.
*489 Thus, enactment of the schools impact fee, which operates as a tax, is outside the scope of municipal authority provided by the Home Rule Amendment. In the absence of a grant of authority from the Legislature, Franklin has no power to impose the schools impact fee, which is therefore invalid. See CMR General, Inc. v. Newton, 387 Mass. 351, 358 (1982).[13] Accordingly, this Court concludes that the Association is entitled to judgment as a matter of law with respect to the schools impact fee.[14]
II. TOWN OF FRANKLIN’S MOTION FOR PARTIAL SUMMARY JUDGMENT WITH RESPECT TO THE SEWER SYSTEM ENTRY FEE, WATER SYSTEM ENTRY FEE AND LIFT STATION DONATION
The Town has further moved for summary judgment with respect to the remaining fees challenged by the Association: the water system entry fee, sewer system entry fee and lift station donation. The Association has moved pursuant to Mass.R.Civ.P. 56(f) for additional time to respond to said motion, asserting that these fees raise issues of material fact which cannot at present be resolved through submission of affidavits.
Massachusetts Rule of Civil Procedure 56(f) provides:
Should it appear from the affidavits of a parly opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just. Mass.R.Civ.P. 56(f).
The trial judge has discretion in determining whether any relief is to be granted under Rule 56(f) and may grant a continuance where he determines that the information which the party opposing summary judgment seeks through additional discovery will raise a material factual question. Commonwealth v. Fall River Motor Sales, Inc., 409 Mass. 302, 307 (1991); Blake Brothers Corp. v. Roche, 12 Mass.App.Ct. 556, 560 (1981). A judge may properly deny a continuance where further discovery would be irrelevant to the issue being adjudicated, where the discovery sought appears privileged and would not be allowed even if a continuance were granted, or where the facts sought are already in the possession of the party opposing summary judgment. Commonwealth v. Fall River Motor Sales, Inc., supra at 309; United States Trust Co. v. Herriott, 10 Mass.App.Ct. 313, 318 (1980). The Court should carefully consider the significance of the material requested and the extent of discovery already permitted or sought. Blake Brothers Corp. v. Roche, supra at 560-61.
It is well established that a party seeking additional time for discovery under Rule 56(f) must file an affidavit setting forth his reasons in order to obtain relief. First Nat’l Bank of Boston v. Slade, 379 Mass. 243, 244-45 (1979); Baker v. Monga, 32 Mass.App.Ct. 450, 453 (1992). Nancy Schlacter, one of the attorneys for the Association, has filed an affidavit stating that the plaintiffs have proceeded diligently with discovery in the present case, seeking public records through a Public Records Act Request on December 14, 1995, serving Interrogatories and Document Requests upon the Town on January 19, 1996, noticing the deposition of Town Administrator Wolfgang Bauer on April 24, 1996 and responding to the Town’s discovery in May and June of 1996. Schlacter further states that as discovery progressed, it became clear that experts would be required to review and analyze the voluminous documentation concerning the water and sewer system entry fees and the lift station donation.
The Association made a deliberate decision to conduct discovery in two phases in response to Bauer’s suggestion that the central legal issue regarding the Town’s right to impose the fees be addressed first as to fees with a straightforward and uncontested record before initiating an in-depth analysis of the Town’s methodology in calculating the fees and extensive review of the Town’s expenditures. The parties agreed that extensive discovery on the water and sewer system entry fees and lift station donation might not be necessary, depending on this Court’s ruling with respect to the sprinkler/hydrant connection fee and schools impact fee. Accordingly, the Association moved for summary judgment on the sprinkler /hydrant connection fee and schools impact fee while suspending discovery with respect to the remaining fees.
Schlacter asserts that the Association cannot respond to the Town’s present motion for summary judgment on the water and sewer system entry fees and lift station donation without further discovery of the following evidence, which is largely in the control of the Town: all town records concerning the calculation, collection and expenditure of the fees at issue; depositions of present and former Public Works Directors and Superintendents of Water and Sewer Departments for the Town; and expert analysis of the Town’s basis for calculating and charging the fee.
Given that this Court has found the Town’s sprinkler/hydrant connection fee to be permissible but its schools impact fee to be unlawful, its decision is not conclusive of the remaining matters between the parties. Rather, an analysis of whether the water and sewer system entry fees and lift station donation satisfy the Emerson College test for distinguishing permissible user fees from improperly levied taxes will depend on the facts particular to the operation of each fee. Compare, for example, Town of Winthrop v. Winthrop Housing Authority, 27 Mass.App.Ct. 645, 647 (1989) (holding that annual charges for the use of a town’s common sewer was a fee and not a tax where *490 the use of a common sewer was a benefit distinct from that originally conferred by building it and was therefor sufficiently particularized; where properly owners were not required by any health or safety measure to connect to the town sewer; and where the charges were based on a percentage of yearly metered water consumption and reasonably compensated the town for the costs of operating and maintaining the common sewer system) with Berry v. Danvers, supra at 510-12 (holding that a sewer connection charge was an impermissible tax rather than a fee where the charge was designed to ensure proper operation of the existing sewer system, so that the benefits were not particularized to the new connectors; where the state code required public sewer connections under the circumstances; and where the funds were not earmarked for sewer capacity expansion).
This Court is satisfied that the particular evidence sought to be discovered by the Association will raise material issues of fact concerning the operation of the sewer and water system entry fee and lift station donation, and that such discovery is necessary to present a full and accurate factual record. The established discovery deadline in this case is January 22, 1998, and the deadline for Rule 56 motions is March 23, 1998. This Court, in its discretion, will therefore grant the Association a continuance until these dates to enable them to respond to the Town’s motion for summary judgment on the remaining fees.
ORDER
For the foregoing reasons, it is hereby ORDERED that the plaintiffs’ motion for partial summary judgment with respect to the sprinkler/hydrant fee be DENIED and that the Town’s cross-motion for partial summary judgment be ALLOWED. It is further ORDERED that with respect to the schools impact fee, the plaintiffs’ motion for partial summary judgment be ALLOWED and that the Town’s cross-motion for partial summary judgment be DENIED.
It is ADJUDGED and ORDERED that a declaration enter DECLARING that:
1. The sprinkler/hydrant fee charged by defendant Town of Franklin is a valid user fee and not an improper tax.
2. The schools impact fee charged by defendant Town of Franklin constitutes an invalid and unauthorized tax.
Finally, it is ORDERED that the Town’s motion for partial summary judgment on the water entry fee, sewer entry fee and lift station donation be DENIED and that the plaintiffs’ motion pursuant to Rule 56(f) be ALLOWED.

 When a building has been constructed on low lying land, gravity may be insufficient to cause sewage from the building to flow into a public sewer at a higher elevation. A lift station pumps sewage uphill to the public sewer.

 Bylaw Amendment 94-257 was superseded by 95-285, which was later amended by 95-306. However, the substantive provisions concerning the water system entry fee have remained essentially the same.

 In finding Boston’s AFSA charge to be a tax rather than a fee, the trial court had emphasized that a fee is based on services performed or delivered and not on anticipatory expenses for services which may never be needed. The trial court thus found that the AFSA charge was coercive because it must be paid irrespective of whether the fire department’s services were actually utilized to battle fires in the specific building for which the charge was imposed. Emerson College v. Boston, supra at 418, 422. The SJC, however, accepted for purposes of its discussion the proposition that owners of AFSA building derived some benefit from the mere availability of fire protection. Id. at 427 n. 18. Later cases support the view that a fee may be charged for a service which is presently available even if the service is not actually used. See Nuclear Metals, Inc. v. Low-Level Radioactive Waste Management Board, supra at 202-04 & n. 10. See also Maine v. Department of Navy, 973 F.2d 1007, 1013-14 (1st Cir. 1992) (concluding that an assessment was a fee and not a tax where the Navy benefitted from the mere availability of a spill response team even though the team had never responded to a spill at the Navy’s shipyard). Thus, the fact that the sprinkler/hydrant fee is based not on fire flow water actually consumed by commercial or industrial payers but rather, on the availability of such water, does not appear to be a ground for deeming it an improper fee.

 Even if the service provided in exchange for payment of the sprinkler/hydrant fee could properly be broadly characterized as fire protection, the Association has failed to introduce any Rule 56 materials demonstrating that commercial or industrial properties in the Town of Franklin are so densely populated that a private property interest in fire suppression cannot be isolated from the interests of the general public. In the recent case Morton v. Hanover, where the town assessed a fee to commercial properties along Route 53 for the installation of a new 16 inch diameter water main servicing fire hydrants in that area and resulting in increased water pressure, the plaintiffs attempted to argue that the benefit was not sufficiently particularized to the commercial property owners because fire protection is a benefit to the public at large. Morton v. Hanover, 43 Mass.App.Ct. 200-01 (1997). However, the Appeals Court rejected this argument, stating:
Even if a major purpose of the main is fire protection, there is no showing on this record that such benefits to the private property interests here are sufficiently related to “the property and safety interests of the public at large” . . . We deem the “spreading of fire” argument to have a very limited application in this case. Given the scope which the plaintiffs urge for that argument, no water system improvement for fire protection ever could be treated as a particularized benefit. Id. at 201-02 n.7.

 Residential properties are not required to have separate water supplies for fire fighting purposes, presumably because they are adequately served by public hydrants.

 As conceded by the Town, the fee is not tied to the volume of water used for fire flow purposes.

 The only evidence the Association has produced relating to this issue is the deposition testimony of Town Administrator Wolfgang Bauer in which he states that he does not know how the sprinkler/hydrant fee was calculated or why the Town changed from a fee based on pipe size to a flat fee. Although Bauer states that Assistant Administrator Norm MacNeill and Fire Chief Keith Hoyle are the people with knowledge of the calculations, it does not appear that the Association deposed them.

 Part 2, c. 5, §5 of the Massachusetts Constitution requires the legislature to “cherish” the public schools and grammar schools in the town." Since the inception of the Commonwealth, the public school system has provided education in the elementary branches of learning to the children of every town, in schools to be managed by and controlled by the authorities of the town, and supported by taxation of the inhabitants. Such education is open and free to all the children and youth of the towns in which they are situated. Jenkins v. Andover, 103 Mass. 94, 97 (1869). Thus, chapter 71 Section 1 mandates that “[e]very town shall maintain . . . a sufficient number of schools for the instruction of all children who may legally attend a public school therein.” G.L.c. 71, §1 (1994).

 Nhe drafter of the school impact fee for St. Johns County was Dr. James Nicholas. See St. Johns County, 583 So.2d at 637. Dr. Nicholas contributed to the study and drafting of the Franklin school impact fee at issue here.

 The other cases cited by the Town in support of the validity of the schools impact fee are also unpersuasive because they lack any analysis of the particularized benefit that is crucial to the validity of a fee under Massachusetts law. The Illinois case cited by the Town upholds school impact fees on a standard similar to Florida’s dual nexus test. See Krughoff v. City of Naperville, 369 N.E.2d 892, 895 (Ill. 1977) (concluding that an ordinance requiring developers to donate either land or money for school facilities was valid where the evidence showed that the required contributions were attributable and fairly proportional to the need for new school facilities created by the proposed development).
Further, the California case upholding school impact fees is inapposite because California has a School Facilities Act, Gov. Code 65970 et. seq., which authorizes local school boards to levy fees or charges against developers in order to fund temporary school facilities necessitated by residential development. See Loyola Marymount University v. Los Angeles Unified School District, 53 Cal. Rptr. 2d 424, 432 (Cal.Ct.App. 1996) (holding that such fees are not ad valorem taxes because they are imposed only if a property owner chooses to develop his land). Finally, the Wisconsin case cited by the Town similarly rests on a state statute, ch. 236, Stats. Sec. 236.45, which delegates to municipalities broad authority to impose restrictions on the subdivision of land to promote the public welfare, including the “facilitation] of adequate provision for transportation, water, sewerage, schools, parks and playgrounds.” Jordan v. Village of Menomenee Falls, 137 N.W.2d 442 (Wis. 1965).

 The cases cited by the Town for the proposition that municipalities have home rule authority to exact impact fees are inapposite and do not change the result here. “Cases in other jurisdictions under different constitutional or charter home rule provisions, or under different statutory situations, are not controlling.” Marshal House, Inc. v. Rent Review and Grievance Board of Brookline, 357 Mass. 709, 719 (1970); Bloom v. City of Worcester, 363 Mass. 136, 156 (1973). For example, one jurisdiction cited by the Town has a home rule amendment which specifically authorizes towns to levy taxes, fees and exactions unless the legislature has otherwise acted. See McCarthy v. Leawood, 894 P.2d 836, 839 (Kan. 1995) (upholding a roads impact fee under home rule authority).

 Given the conclusion that the schools impact fee is invalid under the Home Rule Amendment, this Court need not reach the Association’s myriad other constitutional and statutory arguments concerning the invalidity of the fee. The Association argues that the fee violates Mass. Const., Part II, c. 1, §1, art. 4; Mass. Const., Part II, c. 5, §2; Mass. Const., part I, art. 23; and Articles 10 and 12 of the Declaration of Rights. The Association further contends that the fee is preempted by G.L.c. 40, §§21(1) & 22F; G.L.c. 71, §§1 & 68; G.L.c. 59, §§21C, 21D & 23; and G.L.c. 71, §34.